MATTHEW D. McAULIFFE, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Contributory negligence —" looking " at an approaching train 200 feet distant and not " seeing " it.*

In an action to recover damages for personal injuries sustained by the plaintiff in consequence of being struck at a street intersection by one of the defendant's railroad trains, which was traveling at an excessive rate of speed without giving the customary warning of its approach, evidence given by the plaintiff, an active man in full possession of his faculties, who was thoroughly familiar with the crossing, that when within less than 12 feet of the track on which he was struck, and when the approaching train, the headlight of which was lighted, was in plain view and probably less than 200 feet from him, he looked in the direction of such approaching train, but failed to see it, does not establish that he was free from contributory negligence.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 20th day of March, 1903, upon the verdict of a jury for $900, and also from an order entered in said clerk's office on the 21st day of March, 1903, denying the defendant's motion for a new trial made upon the minutes.

*A. H. Cowie* and *Frank Hiscock*, for the appellant.

*Ray B. Smith*, for the respondent.

SPRING, J.:

The plaintiff, a man twenty-nine years of age, while crossing Washington street at its intersection with Walnut street in the city of Syracuse on the evening of February 6, 1902, was struck and injured by a west-bound passenger train on the defendant's road. Two of the defendant's parallel tracks pass along Washington street and their course for some distance is substantially east and west and they cross Walnut street at grade. Plaintiff was familiar with this crossing and at the time of the accident was employed in a saloon at the northeast corner of Washington and Walnut streets. About half-past six in the evening he crossed to the south side of Washington street and walked a short distance to the east along the south side of the street returning along the same course. While on his return a freight train of eight or ten cars was going east on the south track. When plaintiff reached the street curb he stopped and waited for the freight train to pass and remained standing there until it had gone 100 to 150 feet beyond him, when, as he testified, he looked toward the east but saw no train except the rear lights on the freight train which had just passed. He then walked along the crossing, and when at the south rail of the south track again looked to the east, but discovered no train coming. He continued over the south track, the space intervening the two tracks, and when on the north track was hit by a passenger train going west, at the speed of twenty-five miles an hour, and sustained injuries from which he still claims to be suffering.

The view toward the east was entirely unobstructed for over 1,100 feet to the plaintiff from the curb; the distance from which an approaching train from the east could be observed at this crossing increased as one neared the north track. There are trees along the south side of Washington street, but they do not hide an oncoming train from a pedestrian after he has reached the street curb. The headlight was lit on this train, but the electric light at the street intersection may have been out at the time of the collision.

The jury were justified from the evidence in imputing negligence to the defendant in that it failed to operate its train properly

as it approached this street crossing. The testimony of the plaintiff and his witnesses tends to show that the train ran along this street in the populous part of the city at a high rate of speed in defiance of the city ordinance which limited the rate to a mile in eight minutes; that the ordinary signals were not given as it approached this crossing, although no gates or flagmen were provided to protect travelers. From these circumstances the evidence is ample to establish the negligence of the defendant.

The serious infirmity in the plaintiff's case is his own want of care in going over this crossing. He was an active man in full possession of his faculties. He was thoroughly familiar with the crossing and knew the north track was used by west-bound trains. He testified that after the freight train had passed him 150 feet he looked toward the east and then started to cross over. When he reached the south rail of the east-bound track he looked toward the east again and saw the lights of the outgoing train, but did not observe the approaching train. He then went across this track and the intervening space and was hit while on the west-bound track. The distance from the south rail of the first track to the corresponding rail of the adjacent track was less than 12 feet, and when he was at the south rail the approaching train was probably less than 200 feet from him. In any event it must have been in plain view. This affords another illustration which has become quite common of a traveler at a crossing looking directly at the flaring headlight of an approaching train and still being unmindful of its presence. We apprehend that a traveler approaching a railroad crossing knowing that a train is liable to pass at any time, does not fulfill the obligation resting upon him to exercise care and caution by "looking," but not seeing. As was said by this court in *Swart* v. *N. Y. C. & H. R. R. R. Co.* (81 App. Div. 402, 407): "It cannot be that 'look' simply means that a person with his eyes open shall turn his head in a particular direction. The word as used and understood in the decisions must mean that he 'looked' intelligently and in such manner that what his vision disclosed might influence his action or conduct."

While the fact of the defendant's failure to give the customary warnings at a street crossing, and the reliance which a traveler may be expected to place upon their being given must inevitably enter

somewhat into the consideration of the question of the freedom of the traveler from fault, the duty is still present with him to be cautious and vigilant when he approaches a railroad crossing realizing that a train may pass at any moment. The plaintiff apparently appreciated the necessity of vigilance, but urges that he lived up to it in full measure by looking directly at the train even though he did not see it. This perfunctory performance of the vigilance required of him was not sufficient. (*Fiddler* v. *N. Y. C. & H. R. R. R. Co.*, 64 App. Div. 95, a case closely akin to the present one in its facts; *Daniels* v. *S. I. R. T. Co.*, 125 N. Y. 407.)

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.