The question that the jury had to determine was as to the defendant's knowledge of the methods by which Miller had obtained this money which he had turned over to the defendant. Any declarations or admissions of the defendant in relation to Miller's methods by which he obtained the money were competent evidence as to that knowledge, and, although this conversation may have had but slight relevancy upon this question, it was not, I think, incompetent. As the testimony was of a conversation with the defendant, the only objection to it would be that it was immaterial. It would not justify us in reversing the judgment. I do not consider it necessary to discuss the other exceptions to rulings upon the admission or rejection of evidence, as I am satisfied that none of the rulings about which there is a question could possibly have injuriously affected the defendant.

I have thus stated the reasons which have satisfied us that this conviction should be sustained, without specifically answering all of the objections of counsel for the defendant. The size of this record and the length of the defendant's argument would preclude an answer to all the arguments submitted by the defendant, within the reasonable limitation of an opinion. We think, however, enough has been said to indicate our views upon the main questions presented; and as, upon the whole case, we are satisfied that no error was committed which would justify a reversal of the conviction, it follows that the judgment appealed from must be affirmed.

VAN BRUNT, P. J., and PATTERSON and LAUGHLIN, JJ., concur. HATCH, J., concurs in result.

---

(92 App. Div. 107.)

### LE DUC v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. March 2, 1904.)

1. RAILROADS—KILLING PERSON ON TRACK—LICENSE.

On the issue whether a railway company had assented to the use of a path across its track, it was shown that on one side of the track, where the path entered defendant's right of way, there had been left an opening in the railroad fence about two feet wide, and that on the opposite side of the right of way the fence had been allowed to be down. There was no way of reaching the path without trespassing on the lands of others. There was no extensive use of the path shown. *Held* not to show an acquiescence amounting to a license, so as to impose on the company the duty of using reasonable care in running its trains so as to protect persons using the path.

2. SAME—TRESPASSER.

A person on a railroad track a distance from a path used by the public with the acquiescence of the company, and who was not going toward the opening in the railroad fence where the path entered the right of way, is a trespasser, and the company is liable only in case of willful misconduct resulting in his injury.

3. SAME—CONTRIBUTORY NEGLIGENCE.

Where, in an action against a railway company for negligently killing a person on its tracks, it appeared that the decedent was a boy about 10 years old, as bright as the average boy of that age, with fair hearing and good eyesight; that he was familiar with the locality; that the approach-

ing train was in plain view for several hundred feet at the time he went on the track—he was guilty of contributory negligence, though there was evidence that he looked.

Appeal from Trial Term, Albany County.

Action by Louis Le Duc, as administrator of Louis A. Le Duc, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

William P. Rudd, for appellant.
Mark Cohn, for respondent.

CHESTER, J. The plaintiff's intestate, a boy over 10 years of age, was struck by a locomotive drawing a passenger train running southerly on the defendant's single-track railroad in the southerly outskirts of the city of Cohoes, while he was crossing such track, and was killed. The plaintiff has received a verdict for the resulting damages to the next of kin, and from the judgment entered thereon the defendant has appealed.

The contention of the plaintiff is that the place where the deceased was crossing was a path or traveled way across the railway track, which the defendant had permitted the public to use for many years for their convenience in crossing at that point. While it is in the limits of the city, it is in the outskirts thereof, and it is sparsely settled thereabouts, especially on the westerly side of the track, where it is open country, composed of farm lands. Between the defendant's depot in Cohoes and the southerly boundary of the city there is no street crossing the defendant's track except Columbia street, and that is not a grade crossing. The track between these points is entirely upon the defendant's right of way. The train was running at a speed of 20 to 25 miles an hour. On the east side of the defendant's right of way, at the point in question, there is located a soap factory. On the west side of the right of way, somewhat southerly from the soap factory, is a frog pond, where the plaintiff's intestate and some of his young companions had been playing on the afternoon of the accident. The alleged pathway was one commencing in the west line of the defendant's right of way at the top of an embankment a considerable distance northerly of the north end of the soapworks, and at a point over 400 feet northerly from the place where the plaintiff alleges in his complaint the accident happened, and then leading down the embankment to and across the track to the easterly side thereof, then along that side of the track southerly to the southerly end of a railroad platform at the soapworks, then down a steep incline to the southerly end of a building or barn south of the soapworks, and then across the yard of the soapworks property to a public street.

In order to show that the defendant had assented to the use of this path by those desiring to cross, it was shown that on the westerly side of the track at the point where the path enters the defendant's right

of way there had been left an opening in the railroad fence about two feet wide, with a post upon each side, to which the defendant's wire fence on each side was attached. There was also evidence that the wire fence on the easterly side of the defendant's right of way at the southerly end of the building or barn had been allowed to be down for some time, so that access to the track was not prevented by the fence at that point, and that for a considerable period employés at the soap factory and others had gone on the defendant's right of way at these places, and crossed its track there. From this it is argued that the defendant had acquiesced in the public use of this place as a crossing to such an extent as amounts to a license for such use, and which imposed a duty upon the company as to all persons so crossing to use reasonable care in the running of its trains, so as to protect persons so crossing from injury, under the doctrine laid down in the case of Swift v. Staten Island R. R. Co., 123 N. Y. 645, 25 N. E. 378, and kindred cases. But to hold that doctrine with respect to the facts proven in this case would put the burden upon every railway company to give some warning of the approach of its trains at every point upon its right of way wherever people were accustomed to cross it, whether as licensees or trespassers. I do not think the doctrine can be extended to apply to the facts proven in this case. Here there is no alley, public place, or right of way leading up to the defendant's right of way at either of the places where it is shown that people entered thereon for the purpose of crossing, as has been the case in many, if not most, of the cases where the doctrine contended for has been applied. The opening in the fence on the west side of the right of way led to an open field or pasture lot. The place where the fence was down on the east side of the right of way led to the yard of the soap factory property. All persons crossing the track at the place in question were obliged to trespass on private property to get on the right of way, and also to get off, in whichever direction they were proceeding. The cases, too, where the doctrine has been applied, were where the crossing had been used extensively, notoriously, and with the knowledge of the defendant. Whatever may be said of the use of the opening in the fence on the west side of the track, which was evidently left for the convenience of those going to the soap factory, and of the use of the path leading from such opening across the track to the factory, the proof certainly does not show an extensive or notorious use by those entering the right of way on the easterly side through the yard of the soap factory. The proprietor of the factory, who must be presumed to have as much knowledge of the situation as any one, testified that there has been no path leading from his lot up to the railroad track since 1888, and upon the plaintiff's photograph of that place a path is not perceptible, except it may be to the eye of an expert. It was here where the plaintiff's intestate entered upon the right of way to return to the frog pond to resume his play with his companions after a short absence, when in crossing the track he was killed. The path, if there is one, at that point, does not lead to the frog pond, but up along the rear of the buildings upon the factory property to a point near the south-

westerly corner of the railway platform at the factory. If there is any fact indisputably proven in this case, it is that the plaintiff's intestate was not crossing the defendant's track upon this alleged path at the time he was killed, but he was a very considerable distance southerly therefrom, going towards the frog pond, and not towards the opening in the fence on the westerly side of the track, where the path is claimed to lead. For this reason, even if it be conceded that the defendant owed him a duty had he been upon the path, he was clearly a trespasser where he was, and the defendant owed him no duty of active vigilance, and would only be liable in case of willful or intentional misconduct resulting in his injury. No evidence justifying a verdict on that theory was given, nor was the cause of action based or tried upon that theory.

The evidence showed also that the plaintiff's intestate was guilty of contributory negligence. He was a boy of 10 years of age, as bright as the average boy of that age, with fair hearing and good eyesight. No claim is made that he was not sui juris. There was a spur or side track leading northerly on the east side of the main track from a switch about 140 feet south of the southerly end of the railroad platform at the factory to such platform, and there was evidence that a box car was standing upon this spur at the time of the accident. Notwithstanding this, the plaintiff testified that from the point where he said he saw his boy look both ways just before he proceeded to cross the tracks he could see about 500 feet to the north. An engineering student called by the plaintiff testified that from the position where the plaintiff said the boy was, which was about 25 feet south of the platform of the soapworks, and allowing that the boy's height was from 3 feet 5 to 3 feet 6 inches, he could see up the track 280 feet with the car there on the spur. On the other hand, an engineer sworn for the defendant testified that, standing upon the bank 10 or 12 feet east of the east rail opposite the frog pond, and at the place where it was alleged in the complaint the deceased was crossing the track when he was killed, the track can be seen for a distance of 775 feet northerly, and that a box car standing at the platform of the factory would not at all obstruct the view northerly up the track from that point. So that, even upon the plaintiff's testimony alone, which, in view of the testimony of the defendant's engineer, is as favorable to the plaintiff's case as it could well be made, the boy had an unobstructed view of the track in the direction from which the train was coming for a sufficient distance to have avoided it if he had given any heed to the situation, or had used the faculties which he had. He was familiar with the locality. He was on foot, and could easily have stopped. It was daylight. If he did not see the train before he reached the track, it was by reason of his negligence. If he did see it, his going on without stopping was an act of gross carelessness. Notwithstanding the evidence that the boy "looked," it is clear, in view of the other facts, that there was a failure on the part of the plaintiff to establish that his intestate was free from contributory negligence. McAuliffe v. N. Y. C. & H. R. R. Co., 88 App. Div. 356, 84 N. Y. Supp. 607. Upon the whole case the verdict was clearly against the evidence, and the defendant's motion to set aside the verdict for

that reason should have been granted. There having been an exception to that denial, the defendant is entitled to a reversal.

Judgment and order reversed, and a new trial granted, with costs to the appellant to abide the event.