MARY E. MULLINS, administratrix, vs. NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol.   October 27, 1908. — February 23, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, Gross.   *Railroad.*

If the servants of a railroad corporation, in one of its freight yards, without any warning, shunt cars, which have been detached from a locomotive and are in charge of a brakeman, against a freight car which is standing partly over a crossing of a track near a freight shed, at a place where consignees are expected to and do pass and repass frequently in unloading freight from the cars and where trains cross only a few times each day, and the shunted cars strike the standing car with such force as to push it entirely across the way and against a wagon in which an employee of a consignee is driving with freight which he has unloaded from one of the cars of the corporation, whereby such employee is thrown from the wagon and receives injuries which result in his death, this is evidence of gross negligence of the servants of the corporation in an action brought against it under St. 1906, c. 463, Part I. § 63, by the administrator of the estate of the person killed to recover for his death.

TORT under St. 1906, c. 463, Part I. § 63, by the administratrix of the estate of William H. Jackson, who died on October 17, 1906, from injuries received on September 28, 1906, in the defendant's freight yard in the city of Fall River from being run into by a freight car of the defendant in the manner described in the opinion, with a first count alleging that the death of the plaintiff's intestate was caused by reason of the gross negligence of the defendant's servants and agents in shunting and operating certain cars, and a second count alleging that the death was caused by reason of the gross negligence and unfitness of a brakeman of the defendant.   Writ dated November 10, 1906.

At the trial in the Superior Court before *Bell*, J., the facts appeared in evidence which are described in the opinion.   The part of the defendant's yard where the accident occurred was known as the Windsor Line Wharf.   There were three tracks extending to the water front, which were used to deliver freight to steamers and also to Fall River consignees, who unloaded it into their wagons directly from the cars.   In order to reach the cars the consignees had to cross the northernmost of the three tracks and a plank crossing was in place for that use,

being known as the Windsor Crossing.   On the morning of the accident one Pokrass, a fruit dealer in Fall River, was notified by the defendant that there was a carload of bananas consigned to him, which was on the middle track.   Pokrass sent the intestate, Jackson, his employee, with a wagon to get the fruit.   Jackson after loading the wagon from the car, accompanied by one Sullivan, was driving on to the Windsor Crossing on his return trip, when a freight car, which up to that time had been standing still and alone with its westerly end somewhat over the Windsor Crossing, was set in motion by other cars being run against its easterly end.   When the car began to move Jackson pulled the horse out of danger, but his wagon was struck upon the left front side, and was pushed some distance, when it came to a stop.   The wagon was not turned over, nor was the horse thrown down.   In the collision Jackson was thrown out, and received the injuries which resulted in his death.

At the close of the evidence, the judge ruled that the evidence would not warrant the jury in finding a verdict for the plaintiff, and ordered a verdict for the defendant.   The plaintiff alleged exceptions.

The case was argued at the bar in October, 1908, before *Knowlton*, C. J., *Morton, Loring, Sheldon,* & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*E. F. Hanify*, for the plaintiff.

*F. W. Knowlton*, for the defendant.

RUGG, J.   The plaintiff's intestate was fatally injured while driving a wagon, loaded with fruit, taken from the cars of the defendant, across certain of its tracks at the point provided by it for consignees to travel.   It was not a public crossing, where signals were required to be given.   As the plaintiff's intestate was on the tracks, a box freight car, which previously had been standing partly over the crossing, was struck, by other cars shunted against it, with such force as to push it entirely across the way and against the wagon in which he was driving.   The defendant properly concedes that there was evidence to sustain a finding that the plaintiff's intestate was in the exercise of due care. The only question is whether there was sufficient evidence to warrant sending the case to the jury on the allegation that the servants or agents of the defendant were grossly negligent.

The plaintiff's intestate was crossing the track at the invita-

tion of the defendant. He was in a place frequented by consignees, and where, therefore, the servants of the defendant in the operation of its trains had reason to expect that people might be passing and repassing. There is no definite evidence of the amount of travel, except that which may be inferred from the existence of a freight shed and three tracks where cars were left for the direct unloading of freight by consignees in a large city. It was the defendant's duty to act with reference to the probable presence of human beings. The box car standing partly over the crossing might have been found to be in itself a barrier against danger from moving cars, and an assurance of safety to passers by, and its position to impose a corresponding obligation on the servants of the defendant not to move it or cause it to be moved without first ascertaining whether anybody would be thereby injured. The way was crossed by trains only a few times each day. The jury might find that this fact put a burden of greater care upon the servants of the defendant to warn travellers, who, on this account, might be expected not to be constantly on the watch for moving cars and trains. To drive cars disengaged from the locomotive and in charge of a brakeman with such power as to overcome the inertia of a box freight car at rest and impel it, even at slow speed, thirty or more feet along the rails, cannot be determined as matter of law under these circumstances to be no more than ordinarily careless. Taking into account the fatal results that would be likely to follow from heedlessly propelling cars so as to drive the stationary freight car over the crossing, it was a question of fact for the jury to determine whether there was gross negligence. The case is not distinguishable in its essential characteristics from *Murray* v. *Fitchburg Railroad*, 165 Mass. 448. In *Hartford* v. *New York, New Haven, & Hartford Railroad*, 184 Mass. 365, a verdict for the plaintiff was allowed to stand because, although the servants of the defendant warned the plaintiff's intestate, they failed by a few seconds to wait long enough for him to get out of the way. Here they gave no warning, nor did they ascertain whether any was needed. See *Evensen* v. *Lexington & Boston Street Railway*, 187 Mass. 77. The case is close to the line, however, and the decision is by a majority of the court.

*Exceptions sustained.*