WELLINGTON v. PELLETIER.

(Circuit Court of Appeals, First Circuit. November 16, 1909.)

No. 838.

1. APPEAL AND ERROR (§ 231*)—REVIEW—RECEPTION OF EVIDENCE.

The rule applied that, under the federal practice, a party who relies on a general objection to evidence must show that the defects in the evidence admitted, which are relied on, could not have been cured by the party offering it, if his attention had been called to them.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 231;* Trial, Cent. Dig. § 194.]

2. MASTER AND SERVANT (§ 235*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—DUTY TO OBSERVE AND AVOID DANGER.

Plaintiff's decedent, while at work making a trench between the rails of a private spur track which led from a railroad siding to defendant's quarry, was struck and killed by a car which had been standing with others on the siding, but, being insufficiently blocked, started and ran downgrade upon the spur track. *Held*, that the circumstances were not such as to make the rule applicable which requires unusual care and vigilance on the part of persons on railroad tracks where trains are frequently passing, and that deceased was not chargeable with contributory negligence because he did not keep a constant lookout, and that the circumstances are analogous to those cases requiring the employer to furnish a safe place for working.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 235.*]

3. MASTER AND SERVANT (§ 139*)—INJURY TO SERVANT—PROXIMATE CAUSE OF INJURY—INTERVENING CAUSE.

Where cars were negligently left standing on a side track at the top of a grade by defendants' employés without being secured, except by the setting of the brakes, and one of such cars ran down upon and killed

plaintiff's intestate, the fact that the brake was released by children playing about the cars did not constitute such an intervening cause as would prevent defendant's negligence from being the efficient proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 275–292; Dec. Dig. § 139.*]

**4.** MASTER AND SERVANT (§ 287*) — NEGLIGENCE OF SUPERINTENDENT UNDER MASSACHUSETTS STATUTE.

The question whether a person temporarily in charge of defendant's business was one whose principal duty was that of superintendence, so as to render defendant liable for injury to another employé through his negligence under the Massachusetts employer's liability statute, *held* properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 287.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by Emma M. Pelletier against Arthur J. Wellington. Judgment for plaintiff, and defendant brings error. Affirmed.

Olcott O. Partridge and H. Eugene Bolles (Henry M. Channing, on the brief), for plaintiff in error.

William A. Pew, Jr., for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This suit was brought by the administratrix of the estate of George Pelletier against Wellington, who was operating a quarry, with a verdict for the plaintiff. Wellington owned a spur track which led from a side track of the Boston & Maine Railroad. This side track and the spur track were on a grade. The side track was used for storing empty cars to be loaded in connection with Wellington's business. These cars were left by the Boston & Maine Railroad near the head of the grade on its own siding; and when Wellington or his employés desired cars they were accustomed to select them as needed, and run them down to his spur track. They were ordinarily left near the head of the grade by the railroad corporation with the brakes set, and with a tie across the track blocking the wheels. If the cars were left by the Boston & Maine Railroad on its siding in an unsafe condition with reference to starting down the grade, the fault was with it. So long as the cars remained at that point without any disturbance of the status in which they were left there by the Boston & Maine Railroad, Wellington was, of course, not at fault. It is claimed that, in connection with the injury to the deceased, Wellington's employés ran one or more cars down the grade, and left the remaining cars with their brakes set, without any blocking of the wheels, and that thereupon the boys playing about the cars, and who were accustomed to play about them, in some way started them, and caused them to run down the grade and kill Pelletier. Pelletier was in the employ of Wellington, and at the time was working between the rails of Wellington's spur track, excavating a trench. He appears to have had no connection with the handling of the cars, at least none at

the essential time involved here. There was no evidence that he was looking at the cars, or otherwise watching for a possibility of their running down the grade. The verdict was for the plaintiff, and thereupon Wellington brought this writ of error.

There were a number of minor exceptions taken at the trial, only one of which has been urged upon our attention. This suit being for the negligence of defendant's superintendent, or rather of one who was temporarily acting as superintendent, the statute requires a notice; and it is now urged on us that the notice was not sufficient under the law. The objection to the admission of this notice was only general, which is insufficient to base an exception on under the circumstances of the case, because non constat, if the objection had been specific, it might not have been met by the plaintiff on the spot. Under the federal practice, whoever relies on a general exception must point out that the defects in the evidence admitted could not have been cured by the party offering it, if his attention had been called to those relied on.

Passing by these propositions, the alleged errors are based very largely, if not entirely, on questions of fact which we will deal with quite summarily, because no prejudice can come in any future case from thus dealing with them.

It appears in the record that, when the cars were left by the Boston & Maine Railroad, they were chained to the track. There is no claim that, when any of the cars were taken away as we have described, Wellington's employés replaced the chain with reference to the cars remaining. We pass by this because, under the circumstances, it is clear that the jury could not have been properly instructed to the effect that a mere omission to replace the ties was not a negligent act, as the appellant claims they should have been. This is one of the class of facts within the province of the jury, supported in this case by the almost universal custom to protect railroad cars left near the head of a grade, as these cars were, by something more than merely setting up the brakes.

It is claimed that there was no evidence that the tie was not replaced; but on this point the record stands as follows: Three men went up to bring down the cars. One of them came down with the last car, leaving the two to secure those that remained. One of these men testified that he did not put the tie back, and he added that he had no business to put it back. No one told him to do so. The other one, who was called by the defendant, testified generally, with reference to all the cars, that the tie was put back. He testified that he and the first witness, to whom we have referred, went to the last car which went down the grade, and that one of them handled the tie; but he admitted he did not know whether he did it himself, or the other person we have named. Under the circumstances, we are not only of the opinion that we would not be justified in reversing the finding of the jury on that point, but that, on the other hand, its conclusion was correct.

It is maintained that the deceased was not in the exercise of due care, and there is some discussion with reference to the question of the burden of proof under the Massachusetts statute on which this suit is

based. The ground of this objection is that the deceased was an able-bodied, experienced workman, in full possession of his faculties, familiar with his surroundings, and knew that the cars were stored on the side track above described, that his view was not obstructed, and that he could easily see in each direction. But this is not the case of either a main track or a siding on which trains were regularly or frequently run, or even run at all, so far as the record shows. It shows only the circumstances which we have stated, circumstances to which the duty of listening and looking, so frequently concerned in accidents resulting from the movement of railroad trains proper, has never been applied. This duty relates to circumstances where persons may be in known danger, although every other person does his full part according to law or custom. It does not necessarily apply to the ordinary conditions of work where no danger is customarily expected, provided others than the one injured have used due care. In other words, there is no rule which requires a universal duty of looking and listening under the ordinary circumstances of performing labor, and thus at all times incumbering and delaying its performance. This case is rather of the class where the person held in fault is required to secure the person injured a safe place for working, as a consignee unloading a car. Wright v. The Railway, L. R. 10 Q. B. 298, affirmed 1 Q. B. 252 (1876); Mullins v. Railroad Co., 201 Mass. 38, 87 N. E. 476.

It is claimed that the interposition of the boys in this case was the interposition of a new efficient cause, which, if interposed, the law says eliminates the original cause. On the other hand, it has been thoroughly understood, since the leading case of Scott v. Sheperd, 2 W. Bl. 892, well known as the "Squib Case," that the interposition even of human beings, acting under circumstances which deprive them of periods for reflection, or known to be of classes which are ordinarily governed by unreasoning impulses, does not come within the class of responsible interventions referred to. This is illustrated in one direction by the squib case, and in the other direction by the well-known cases where young children, either through carelessness or inattention, have been intrusted with dangerous weapons. The general principle is sufficiently discussed in Pollock's Law of Torts (8th Eng. Ed.) 45 et seq. The rule on which the plaintiff relies in this respect was authoritatively stated and applied by the Court of Appeal in 1896 in Engelhart v. Farrant, [1897] 1 Q. B. 240. Oddly enough, in McDowall v. Great Western Railway Company (in the Court of Appeal in 1902) 2 Q. B. [1903] 331, the circumstances with reference to cars and boys were strictly like those at bar and the case was distinguished solely on the point that the jury expressly found that the defendant was not at fault. Therefore, of course, there was no operative negligence which could be either an immediate or a remote cause of the accident.

After all, the only close point in the case is on the question of superintendence. The intestate and the man through whose negligence the tie was not replaced were coemployés. The usual superintendent was absent. Of course, evidence of a much less striking character may be required to prove the characteristics of one exercising superintendence temporarily under the Massachusetts statutes than those of the usual

superintendent. We went into the law regarding this question of superintendence sufficiently in Canney v. Walkeine, 113 Fed. 66, 51 C. C. A. 53, 58 L. R. A. 33, decided June 14, 1901, and in Munroe v. Ley, 156 Fed. 468, 84 C. C. A. 278, decided October 22, 1907. We need in this case to add nothing to what is there stated by us. It is not at all improbable that, if we had been the jury, instead of the appellate court, we might have found on the facts otherwise than was found. Nevertheless, the charge of the presiding judge was very full and clear, and called the attention of the jury carefully and correctly to all phases of the facts, which were multifarious; and, taken altogether, the condition is such that we cannot lawfully interfere with the result.

The judgment of the Circuit Court is affirmed, with interest, and the defendant in error recovers her costs of appeal.