[No. 8400.  *En Banc.*  April 8, 1910.]

ERNEST OLSON, *a Minor, by his Guardian etc., Respondent,*

v. GILL HOME INVESTMENT COMPANY *et al.,*

*Appellants.*[1]

EXPLOSIVES — NEGLIGENCE — DANGEROUS PREMISES — TRESPASSING CHILDREN—EVIDENCE—SUFFICIENCY. It is negligence for defendant, in violation of a city ordinance, to needlessly store exposed dynamite, fuse, and caps, not intended for immediate use, upon a shelf in an unlocked toilet on premises frequented by trespassing children, where it was apt to be found and taken, and the defendant is liable for injuries sustained by a boy thirteen years of age, who took the same and was injured in attempting to cause an explosion, the defendant owing in such case the highest degree of care as to trespassing children.

SAME—PROXIMATE CAUSE—INTERVENING ACTS—QUESTION FOR JURY. In such a case, the negligent act of storing the explosives is the proximate cause of the accident, notwithstanding the criminal act of the boys in stealing the dynamite, fuse, and caps, it being for the jury to determine whether the defendant should have anticipated the result.

SAME — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY. A boy thirteen years of age who steals dynamite, fuse, and caps, and knows of its explosive qualities, is not, as a matter of law, guilty of contributory negligence precluding a recovery for injuries received, where he caused an explosion in attempting to pry out the cap with a stick, after unsuccessful attempts to fire the cap.

[1]Reported in 108 Pac. 140.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE. A new trial for newly discovered evidence is properly refused where the new evidence merely affected the credibility and weight of the evidence of witnesses who had given conflicting evidence upon a former trial of the action, such previous testimony having been shown on the last trial.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $25,000 for the loss of both hands by a boy thirteen years of age is not excessive.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered March 30, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a minor through an explosion of dynamite. Affirmed.

*Leander T. Turner, Ellis, Fletcher & Evans,* and *Sandford C. Rose,* for appellants.

*H. M. Owens* and *Bates, Peer & Peterson,* for respondent.

CROW, J.—This action was commenced by Ernest Olson, a minor, by M. E. Olson, his guardian *ad litem,* against Gill Home Investment Company, a corporation, and Clark N. Gill, its president and manager, to recover damages for personal injuries. From a judgment in plaintiff's favor, the defendants have appealed.

The appellant Gill Home Investment Company was engaged in selling an addition to the city of Tacoma, and was itself owner of four unfenced lots therein, located at the intersection of two public streets. A small building constructed for toilet purposes was located on these lots, about one hundred and twenty-five feet from one street and thirty-nine feet from the other. A board screen or wall, about six feet high, was in front of the unlocked toilet door. Between the toilet and the nearest street was a small tool house. Some weeks prior to the accident which caused respondent's injuries, the appellant corporation commenced the construction of a cement building, and Clark N. Gill, its president and manager, caused a box and several loose sticks of Her-

cules stumping powder (hereinafter called dynamite, a term used by the witnesses), to be removed from the tool house and stored on a shelf in the toilet, doing so to protect workmen who went into the tool house. The shelf was located on plates upon which the rafters rested, about six feet eight inches above the floor and five feet eight inches above the seat of the toilet. The toilet door was left unlocked. A pile of sand, attractive to children but designed for use in mixing concrete, was kept on appellants' lots near the toilet. A public school was about three blocks distant. Several residences, the homes of children, were located in the vicinity. A number of young school boys, including the respondent, were in the habit of playing upon appellants' lots. They occasionally visited and used the toilet, as did other persons, most of whom were appellants' employees. One of the boys, Wesley Depew, nearly fourteen years of age, discovered the box and loose sticks of dynamite and told his twin brother Leslie Depew of such discovery. On a Sunday prior to the accident, Leslie Depew, with two younger boys, went to the toilet and took a loose stick of dynamite which they hid under a stump. Wesley Depew had previously taken some dynamite caps and fuses which he says he found in the toilet. He exploded one of these caps and gave some of them to the respondent, who was then about thirteen years of age. On the day of the accident, Leslie Depew and two other boys, accompanied by respondent, took the dynamite, caps and fuse, to some vacant ground one-fourth of a mile distant, where respondent attached a cap and fuse to the stick of dynamite, and igniting it, unsuccessfully tried to explode it under a large stump. He then attempted to explode it with a lighted paper, but again failing, undertook to remove the cap by prying it from the dynamite with a stick. This produced an unexpected explosion which caused respondent to lose both of his hands.

Appellants have filed admirable briefs, in which numerous assignments of error, involving many interesting points, are

presented; but their controlling proposition is that the trial court erred in refusing to instruct the jury to return a verdict in their favor. They, in substance, contend, (1) that the respondent and other boys were trespassers, to whom they owed no other duty than not to wilfully or maliciously injure them; (2) that if appellants were in fact negligent (which they deny), their negligence was not the proximate cause of the accident; (3) that intervening between the storage of the dynamite and the injury were the criminal acts of the boys in stealing the dynamite, caps and fuse, which acts were the proximate cause of the accident; and (4) that the respondent was guilty of contributory negligence as a matter of law.

The respondent contends that the sand made the place attractive to the boys; that they had been in the habit of frequently playing there, a fact well known to appellants; that appellants were guilty of negligence in leaving the loose dynamite in the unlocked toilet where it was apt to be found and taken by the boys; and that such negligence was the proximate cause of the accident.

To sustain appellants' contention that the boys were trespassers, Clark N. Gill and two or three employees of the corporation testified that they had driven them away on several occasions. It is manifest that the boys repeatedly went upon the lots to the appellants' knowledge. This being true, we think the evidence is sufficient to show that the appellants were guilty of the grossest and most culpable negligence in storing the dynamite as they did, concededly in violation of a city ordinance, and in leaving a door unlocked in a locality where, as they knew, the boys frequently went, whether as trespassers or otherwise. They knew the dynamite was a dangerous agency. There is no evidence that they were then using it, or that they intended to use it in the immediate future, or that they would need it at any time. The evidence rather indicates that the dynamite was unlawfully stored and left for an indefinite time in an unlocked, vacant structure

where the appellants must have known the children were liable to be, either as trespassers or otherwise. In support of their contention that they are not liable to respondent, whom they claim to have been a trespasser, the appellants cite *Curtis v. Tenino Stone Quarries*, 37 Wash. 355, 79 Pac. 955; *Burnett v. Fort Worth Light & Power Co.*, 102 Tex. 31, 112 S. W. 1040, 19 L. R. A. (N. S.) 504; *Masser v. Chicago R. I. & P. R. Co.*, 68 Iowa 602, 27 N. W. 776; *Driscoll v. Clark*, 32 Mont. 172, 80 Pac. 1, 373; *Le Duc v. New York Cent. H. R. Co.*, 92 App. Div. 107, 87 N. Y. Supp. 364; *Kelly v. Benas*, 217 Mo. 1, 116 S. W. 557, 20 L. R. A. (N. S.) 903; *Felton v. Aubrey*, 74 Fed. 350. None of these cases are similar to the one at bar. In each of them the defendant was charged with negligence in operating, constructing, or maintaining certain appliances, machinery, or plants used in and necessary to the conduct of his or its business. In the *Curtis* case the plaintiff, a child, was injured by machinery which constituted a part of the defendant's plant. In the *Burnett* case the plaintiff, a boy, went upon a roof where he was electrocuted by a wire which, although negligently exposed without being insulated, was nevertheless a part of the defendant's plant. In the *Masser* and *Le Duc* cases the children trespassed upon railways. The other cases are similar in principle. It was necessary in each instance for the defendant to have and operate the appliance which caused injury to the trespassing boys. The defendants, even had they known of the trespassing, could not have entirely refrained from installing and operating their several plants or appliances and at the same time continue their business. In the *Curtis* case this court said:

"To hold, as a general and universal rule of law, that the owners of mills and factories must so construct and maintain their premises as to be reasonably safe for trespassers, infants or adults, regardless of how they may gain admission, would be destructive of all industry and all property rights. We are satisfied, therefore, that the respondent violated no duty it owed to the appellant as a trespasser upon its premises."

Here the appellants, having no apparent use for the dynamite and knowing of the trespassing proclivities of the boys, needlessly stored it, a most dangerous agency, where, in the exercise of ordinary prudence, they should have anticipated the trespassing boys would readily find, be attracted by, and take it. Under such circumstances we cannot hold that the trespassing of the boys should, as a matter of law, excuse the appellants from liability. The degree of care required of those who have control of dangerous explosives is discussed in *Mattson v. Minnesota & N. W. R. Co.*, 95 Minn. 477, 104 N. W. 443, 111 Am. St. 483, 70 L. R. A. 503, the court saying:

"The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article (Keasbey, Electric Wires, 2d ed., 269, 270), and is greater and more exacting as respects young children. As to such, the care required to be exercised is measured by the maturity and capacity of the child. *Railway Co. v. Stout*, 17 Wall. 657. What would constitute reasonable care with respect to adults might be gross negligence as applied to a young child. 7 Am. & Eng. Ency. Law (2d ed.) 441, and cases cited. The case at bar, within these rules, is even stronger than the so-called 'turntable cases.' There is nothing so attractive to young boys as articles of an explosive nature, and the greater the volume of sound that may be produced therefrom the greater the attraction. As compared with an ordinary turntable, dynamite is vastly more attractive, and far more dangerous. Young children are incapable of comprehending the dangers in handling or exploding the same, and their natural instincts urge them into experiments with it whenever it comes within their reach. In view of these considerations, the rule of law imposed upon him who possesses such dangerous articles should be more exacting than in the case of a turntable; and, applying the rule to the facts before us, it is clear that the jury was justified in finding negligence upon the part of the defendant. It

failed to take proper care of dynamite brought into this vicinity, and left it exposed upon the premises where children had, to the knowledge of its servants, been in the habit of loitering and amusing themselves."

The strongest case cited in favor of appellants' contention is *Finkbeiner v. Solomon*, 225 Pa. 333, 74 Atl. 170, in which a child was injured by an explosive claimed to have been negligently stored; but the court said:

"The facts of the case bring it close to the line of what might be deemed negligence, but we cannot say that the view taken by the court below was wrong. It cannot be said that placing a box of such caps upon a dark shelf in a barn is in itself a negligent act. If defendant had thrown the caps out, loosely, where children were likely to play, and would be apt to find them, the case would have been very different."

Although appellants did not loosely throw out the dynamite, caps and fuse, they might as well have done so as to have placed them where the boys were apt to, and did, readily find them, a result appellants should have anticipated. We do not think the decision cited is so controlling in principle as to require a withdrawal of this case from the jury.

Appellants, citing many authorities, further contend that their negligence, if conceded, was not the proximate cause of the accident, but that the intervening criminal act of the boys in stealing the dynamite, caps and fuse, and their subsequent acts in attempting to explode the same, were the proximate cause. In an action for damages resulting from negligence, the defendant will be held liable for the natural and probable consequences of his negligent acts. To create such a liability the injury complained of must result from the negligence charged, which will not be considered as too remote if the resulting accident might have been reasonably anticipated. The act of an intervening third party, contributing to the injurious result of the original negligence, does not, in all cases, excuse the original wrongdoer. If such intervening act could, or in the exercise of ordinary prudence should, have been foreseen, the original act still remains the proximate

cause of the injury. In this case it was for the jury to determine whether the appellants who carelessly and illegally stored, and it might be said abandoned, a dangerous explosive, should have anticipated that it might come into the possession of young boys who frequented the place, even though they were trespassers.

"In addition to the requirement that the result should be the natural and probable consequence of the negligence it is commonly stated that the consequence should be one which in the light of attending circumstances an ordinarily prudent man ought reasonably to have foreseen might probably occur as the result of his negligence." 29 Cyc. 493.

See, also, *Nelson v. McLellan*, 31 Wash. 208, 71 Pac. 747, 96 Am. St. 902, 60 L. R. A. 793; *Akin v. Bradley Engineering & Mach. Co.*, 48 Wash. 97, 92 Pac. 903, 14 L. R. A. (N. S.) 586; *Wellington v. Pelletier*, 173 Fed. 908; *Mattson v. Minnesota etc. R. Co.*, supra; *Powell v. Deveney*, 3 Cush. 300, 50 Am. Dec. 738; *Scott v. Shepherd*, 2 W. Bl. 892; *Englehart v. Farrant & Co.*, 1 Q. B. (1897) 240; *Myers v. Sault St. Marie Pulp & Paper Co.*, 3 Ont. L. R. 600; *Labombarde v. Chatham Gas Co.*, 10 Ont. L. R. 446; *Clark v. Chambers*, 3 Q. B. (1878) 327, 7 Cent. Law Journal 11; *Lynch v. Nurden*, 1 Q. B. 29; *Illidge v. Goodwin*, 5 C. & P. 190; *Lake v. Millikin*, 62 Me. 240, 16 Am. Rep. 456; *Harriman v. Pittsburgh etc. R. Co.*, 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. 507; *Lane v. Atlantic Works*, 111 Mass. 136; *Powers v. Harlow*, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154; *Mize v. Rocky Mountain Bell Tel. Co.*, 38 Mont. 521, 100 Pac. 971, 129 Am. St. 659; *Fishburn v. Burlington & N. W. R. Co.*, 127 Iowa 483, 103 N. W. 481.

No two cases can be found which are identical, and there is an irreconcilable conflict of authority on this question, but we think the above mentioned cases, and many others that might be cited, announce correct principles of law applicable to the facts now before us. In *Myers v. Sault St. Marie Pulp & Paper Co.*, supra, a workman employed by the de-

fendants ascended a movable stepladder to work near the unguarded rim of a cogwheel. When he was about to descend, a truckman moved the ladder, causing him to fall on the unguarded wheel. The contention was made that the defendants' negligence in failing to guard the cogwheel as required by statute, and in failing to provide an immovable ladder, was not the proximate cause of the accident, but that the wrongful act of the truckman in moving the ladder was such proximate cause. The issue was submitted to the jury, and the appellate court, speaking through Armour, C. J. O., said:

"The jury having found that the injury to the workman was caused by the negligence of the defendants in no way guarding the wheel, and in not properly fastening the ladder to the floor, and this finding being, as I think, supported by the evidence, the next question is, did the intervention of the workman in wrongfully taking away the ladder relieve the defendants from the consequences of their negligence, and I think not, for the defendant's negligence still remained an operating cause of the workman's injury. According to what is said by Lord Esher and Rigby, L. J., in *Engelhart v. Farrant & Co.* [1897], 1 Q. B. 240, the question whether the negligence of the defendants was an effective cause of the workman's injury was a question for the jury, and if so, they have in effect determined it, by finding, as they did in their answers to the third and seventh questions submitted to them. And I think that the authorities show that the intervention of the workman in wrongfully taking away the ladder did not relieve the defendants from the consequences of their negligence."

In *Labombarde v. Chatham Gas Co., supra,* where plaintiff received an electric shock, the court said:

"But if the actual throwing of the loose guy wire over the other wires were the act of some passer-by, who thought to put it out of the way, or even of some mischievous urchin, it seems to me such a likely and probable thing to happen that it is not too remotely connected with the act of cutting the guy wire from its fastenings and leaving it loose on the ground to render those guilty of the latter negligence liable

for the consequences which ensued though an independent agency had intervened as their immediate cause. The original negligence of the workmen of the defendant company was an effective cause of the injury to the plaintiffs. *McDowall v. Great Western R. W. Co.* [1902], 1 K. B. 618 [1903], 2 K. B. 331, 337-8."

The recent case of *Wellington v. Pelletier, supra,* is especially pertinent. There the defendant's employees had negligently left a number of cars standing on a spur track at the head of a grade, secured only by setting the brakes. They should have been further secured by fastening or blocking the wheels. Some children playing about the cars released the brakes, causing them to run down and kill defendant's employee, who was working in a trench between the rails of the spur. It was held that the intervening act of the children did not prevent the defendant's negligence from being the proximate cause of the accident. The court said:

"It is claimed that the interposition of the boys in this case was the interposition of a new efficient cause, which, if interposed, the law says eliminates the original cause. On the other hand, it has been thoroughly understood, since the leading case of *Scott v. Shepherd,* 2 W. Bl. 892, well known as the 'Squib Case,' that the interposition even of human beings, acting under circumstances which deprive them of periods for reflection, or known to be of classes which are ordinarily governed by unreasoning impulses, does not come within the class of responsible interventions referred to. This is illustrated in one direction by the squib case, and in the other direction by the well known cases where young children, either through carelessness or inattention, have been intrusted with dangerous weapons. The general principle is sufficiently discussed in Pollock's Law of Torts (8th Eng. ed.) 45 *et seq.* The rule on which the plaintiff relies in this respect was authoritatively stated and applied by the Court of Appeal in 1896 in *Engelhart v. Farrant* [1897] 1 Q. B. 240."

In this case it was for the jury to determine whether respondent and the other boys, considering their age, their experience, and their knowledge of right and wrong, were

in their acts governed by unreasoning and natural impulses. That the question of proximate cause was properly submitted to the jury, see: *Milwaukee & St. Paul R. Co. v. Kellogg*, 94 U. S. 469; *Union Pac. R. Co. v. Callaghan*, 56 Fed. 988; *Denver etc. R. Co. v. Robbins*, 2 Colo. App. 313, 30 Pac. 261.

Appellants make other assignments of error based upon instructions given and refused, but the foregoing discussion disposes of them adversely to their contention. The instructions given fully, fairly, and correctly stated the law, and properly submitted all issues of fact to the jury for their consideration.

It is contended that the criminal act of the boys in stealing the dynamite was such an independent, intervening act as to insulate the appellants' negligence and relieve them from liability. The question as to whether the boys fully understood the criminal import of their act was properly submitted to the jury and determined adversely to the appellants' contention, as was also the question of the contributory negligence of the respondent, he being of tender age. There was evidence tending to show that the boys, including respondent, did, to a limited extent, realize that dynamite was a violent explosive. They were trying to explode it; but the evidence further shows that they did not fully understand or appreciate all of its dangerous qualities. They supposed it could only be exploded by some method of ignition, and when they lit the fuse, they dodged behind large stumps for protection. It is evident, however, that they did not anticipate that any explosion could be produced in the manner in which it was produced. In the light of respondent's tender years, his limited knowledge, his lack of experience, and all of the facts and circumstances disclosed by the evidence, we cannot hold that he was, as a matter of law, guilty of such contributory negligence as to relieve the appellants from liability, but must hold that the question of his contributory negligence was an issue for the jury.

It appears that, on a previous trial, the boys Wesley and Leslie Depew gave evidence tending to show that, when they took the dynamite, caps and fuse, they understood they were guilty of the act of stealing. On the last trial their evidence tended to show that they did not understand their acts to be criminal, but supposed they were taking abandoned property, and at the time thought nothing about any criminal act or wrong being involved. After the trial certain affidavits were procured from the boys, tending to show that they did understand the criminal nature of the acts involved, and upon these affidavits as newly discovered evidence, the appellants moved for a new trial. They now contend that the trial judge erred in denying their motion. Upon the last trial they were permitted to, and did, show the previous testimony of these boys, and were a new trial to be now granted, it could again be shown that on different occasions there had been some conflict in the boys' testimony. Even then, their credibility and the weight of their evidence would still be a question for the jury. We fail to see that the trial judge abused his discretion or invaded any of appellants' rights in denying the motion for a new trial.

The jury awarded damages in the sum of $25,000, for which judgment was entered. Appellants now contend the award is excessive. While the verdict is large, the respondent sustained most terrible injuries. We do not think we would be justified in ordering any reduction. The judgment is affirmed.

RUDKIN, C. J., DUNBAR, PARKER, MOUNT, FULLERTON, and GOSE, JJ., concur.