JOHN D. CASEY, Admr., Appellee, *vs.* THE KELLY-ATKIN-SON CONSTRUCTION COMPANY, Appellant.

*Opinion filed June 16, 1909.*

1. EVIDENCE—*supposition of witness as to a proved fact is not prejudicial.* A statement by a witness that he "supposed" a certain fact, is not prejudicial or harmful, where such fact was admitted or proved without contradiction.

2. SAME—*statement that there was plenty of time to do a thing is not a mere conclusion.* A statement by a witness that after he had called defendant's foreman's attention to an approaching storm there was plenty of time to have fastened a certain appliance used by them in their bridge construction work before it began to move on the rails by the force of the wind is not a mere conclusion.

3. MASTER AND SERVANT—*when the rule as to safety of place of work where conditions are changing does not apply.* The rule that a master is not required to keep the place of his servant's employment reasonably safe where the conditions of the place of work are constantly changing, as in case of the construction of a bridge, has no application where the servant's death was not caused by any changing condition in the prosecution of the work or insecurity of the place where he was working, but by his foreman's negligence in another matter.

4. SAME—*what tends to show that the placing of chucks under wheels was not sufficient.* The fact that a "traveler," which was a huge appliance mounted on car trucks running on two parallel railroad tracks on the false work of the bridge being constructed by the defendant, was always chained at night to prevent its being moved by high winds, tends to show that the method of blocking the wheels by chucks when the machine was in use in the daytime was not a sufficient method of securing it against such winds.

5. SAME—*when a verdict should not be directed on the ground risk was assumed.* In an action for damages for the death of the defendant bridge company's employee, who was killed when the "traveler," which was being blown along the rails by the wind, ran off the rails and fell to the ground, a verdict should not be directed for the defendant upon the ground the risk was assumed, where it is not shown that the moving of the traveler by the wind was a usual occurrence, or that the deceased knew, or should have known, his foreman would neglect to take ordinary precautions to fasten the traveler before the storm, which was not so sudden or severe that it might not reasonably have been anticipated.

6. SAME—*when question of master's negligence is for the jury.*
Whether the defendant's foreman was guilty of negligence in not
fastening a "traveler" to prevent its being moved along its tracks
by wind is a question for the jury, where the evidence shows that
for two or three hours before the wind came, the clouds, the hot,
sultry atmosphere and occasional thunder indicated the coming of
the storm, and that when its approach was called to the attention
of the foreman he stated that "it was all right," and directed the
men to go ahead with their work of unblocking the wheels of the
traveler preparatory to moving it.

7. SAME—*when fact that storm may have been principal cause
of injury is no defense.* An instruction stating, in substance, that
if the jury believed, from the evidence, that the defendant was
guilty of the negligence charged in the declaration, and that such
negligence directly contributed to the accident, and that the acci-
dent would not have happened except for such negligence, then the
fact that a storm also contributed and helped to cause, or was the
principal cause, of the accident was not a defense, is not errone-
ous, where other given instructions stated that there was no neg-
ligence if the storm could not have been foreseen and anticipated.

8. SAME—*when a foreman is not a fellow-servant of workmen.*
A foreman on bridge construction work, while he may, as to some
of his acts, be a fellow-servant of other employees of the common
master, is not their fellow-servant as respects his commands and
directions to them, within scope of his authority, as their foreman.

9. INSTRUCTIONS—*an instruction tending only to encourage dis-
agreement of jury should be refused.* An instruction stating that
no juror should be persuaded by his brother jurors to consent to
a verdict which did not meet with his own judgment and conclu-
sions after due deliberation with his fellow-jurors and a full con-
sideration of all the evidence, facts and circumstances in the case
and the law given in the instructions, is properly refused, as tend-
ing to encourage a disagreement of the jury.

10. TRIAL—*when an attorney may denounce conduct of defend-
ant's foreman as almost criminal.* It is not improper for the plain-
tiff's attorney, in his argument to the jury, to state that the conduct
of the defendant's foreman, in the face of the apparent danger and
even with his attention called to it, was almost criminal, where it
was a fair subject for argument whether the conduct of such fore-
man, under the facts proven, was extreme in character.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. A. H. CHETLAIN, Judge,
presiding.

40—27

SCHUYLER, JAMIESON & ETTELSON, for appellant.

JAMES C. McSHANE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On July 8, 1904, the appellant, Kelly-Atkinson Construction Company, was building a railroad bridge for the American Bridge Company across the Mississippi river near the town of Thebes, in this State, and one of the structural iron workers engaged in the work was Albert Miller. In the construction of the bridge several bents or sections of false work had been erected to the height of the floor of the bridge, which was seventy feet above the ground. The false work was built on piling driven into the ground, and on this false work there were three railroad tracks of standard gauge. The north and south tracks were three feet above the floor of the bridge, and on them there was a structure called a "traveler," constructed of heavy upright timbers and cross-pieces and weighing 120 tons. The traveler was over ninety feet high, sixty-six feet wide north and south or up and down the river, and fifty-six feet east and west. It stood upon ordinary car trucks on the two tracks at each corner. The middle track was three feet lower or on a level with the floor of the bridge, and iron columns, girders and other material were brought in on that track and were handled by the traveler for the purpose of putting them in position. There was a hoisting engine used in connection with the traveler and located on the south side of the tracks. At night the traveler was fastened by chains passed around the corner timbers and fastened to the false work, to prevent its being moved by a wind if one should arise in the night. When the traveler was moved and in use the wheels were blocked by what were called "chucks," consisting of 4x4 or 4x6 tim-

bers placed in front and behind the wheels. When the traveler was in use it was in a stationary position and blocked under the center. On the morning of that day the chains were removed and the traveler was run west about three hundred feet, where it stood until about 3:30 o'clock in the afternoon. George W. Brown was the boss or foreman in charge of the erection of the work and the men were subject to his directions and were about to move the traveler under his management and direction. Miller was working that day on the traveler, and at that time was on the track on which the traveler was located and was getting some washers or belts for his work. As the men were about to move the traveler a high wind came up and started the traveler eastward along the track, which was level. Miller, who was about three hundred feet east of the traveler, came running by a companion, saying that the traveler was coming, and they ran along the false work about one hundred feet to the descending ladder at the east end. Miller started down the ladder, his companion following him, and the traveler with increasing speed ran along the tracks and struck the hoisting engine and ran off the false work to the ground below. Miller had probably got eight feet from the top of the ladder when the traveler toppled over and knocked him to the ground, about seventy feet below, inflicting injuries from which he died.

The appellee, John D. Casey, as administrator of the estate of Miller, brought this suit in the superior court of Cook county, charging that in case of a high wind the traveler was liable to start and run along upon the false work; that prior to the accident the conditions of the weather indicated that a high wind was liable soon to be blowing, and if the traveler was not properly and securely fastened there was danger of its starting and running along the false work and causing injury; that defendant, through its foreman, knew, or by the exercise of ordinary care might have known, of that fact, and in violation of its

duty negligently failed to secure the traveler; that in conse-
quence of such negligence the traveler started to run along
the false work and fell therefrom to the ground, and that
it knocked Miller from the false work a great distance to
the ground, whereby he suffered such bodily injuries that
he died. The plea was not guilty, and upon a trial there
was a verdict for the plaintiff for $6000, on which judg-
ment was entered. The Appellate Court for the First Dis-
trict affirmed the judgment.          /

It is contended that the court erred in ruling on the
admission of evidence, and one complaint is that the court
overruled an objection to an answer by the companion of
Miller, in which he stated that the traveler came upon them
and he supposed it killed Miller, who fell about seventy-five
feet. Counsel say that the statement of the witness that
he supposed the traveler killed Miller was not responsive to
the question, was a conclusion and a dangerous and preju-
dicial statement. There was no contradiction whatever in
the evidence as to the cause of Miller's death, and in view
of the fact that it was expressly admitted by defendant's
counsel, during the examination of this witness, that the
accident resulted in the death of Miller, the supposition of
the witness as to a proved and admitted fact was not dan-
gerous or prejudicial to the defendant.

The defendant admitted that if an absent witness were
present he would testify to the facts stated in an affidavit,
and the affidavit stated that when the witness and other ser-
vants of the defendant, in obedience to the orders and di-
rections of the foreman, unfastened the traveler from the
false work and were taking out the blocking under the cen-
ter of the traveler, the witness said to the foreman that it
looked like a storm was coming up, and the foreman said
in reply that it was all right—go ahead; and there was
plenty of time between the conversation and the time the
traveler started to run in which the traveler could have been
fastened. The court overruled an objection to the state-

ment that there was plenty of time to fasten the traveler, and it is said that the statement was a mere conclusion. We do not so regard it, and do not see any substantial difference between the statement as given and giving the time between the conversation and the moving of the traveler and the time necessary to fasten the traveler.

The vice-president of the defendant, when testifying, was asked whether there was anything in the clouds that day, or the wind or clouds, from which the storm could be anticipated, and the court sustained an objection to the question; but the witness was then permitted to go fully into every fact pertaining to the question, to describe the conditions and everything that he saw, and to state what he could or could not have anticipated. He testified what the atmospheric conditions were and what he knew about summer storms and winds, and said that had he been working on the traveler he would not have paid any attention to the appearance of the clouds. The defendant had the benefit of everything the witness knew and also of his opinions, and it is not necessary to consider whether the ruling, when made, was right or wrong.

It is argued that the court erred in refusing to direct a verdict of not guilty, and in support of the argument various reasons are assigned. Counsel say that the conditions in the construction of the bridge were changing, from time to time, in the prosecution of the work, and for that reason the law did not impose any duty upon the defendant to keep the place of Miller's employment reasonably safe. There is a rule of that kind, but it has no relation to this case, for the reason that the accident did not result from changing conditions in the prosecution of the work which made the place unsafe. The accident resulted from a failure to properly secure and fasten the traveler and not from any insecurity of the place where the work was being performed, such as would arise in the extension of the false work or other changes in the place of employment.

It is further contended that there was no evidence that the wind or weather conditions were such as to lead an ordinarily prudent person to suppose that the traveler ought to be fastened, or that the placing of chucks under the wheels was an insufficient method in view of the conditions, or that defendant knew, or by the exercise of ordinary care ought to have known, that such method was defective. The fact that the traveler was fastened at night to prevent its being moved in case of a considerable wind tended to prove that chucks would not be sufficient if there was such a wind. The evidence for the plaintiff was that the appearance of the sky indicated, for two or three hours before the wind arose, that a storm was coming; that during that time the western horizon was covered with dark clouds and the air was hot, sultry and oppressive, indicating a probable storm; that the storm did not come up without any warning, but there was an occasional roar of thunder for one-half or three-quarters of an hour, and that one of the men preparing to move the traveler told the foreman that it looked like a storm was coming up, and the foreman, in reply, said it was all right. The only evidence to be considered is that which tended to sustain the cause of action, and that evidence was sufficient to require submission to the jury of the question of negligence.

It is also insisted as a reason for directing a verdict that the death of Miller resulted from a risk of his employment, which, as a matter of law, he had assumed. That position is clearly incorrect. There was no evidence tending to prove that the moving of the traveler by the wind was a usual or ordinary occurrence, but the evidence was to the contrary. There was no evidence that the deceased knew, or ought to have known, that the foreman had neglected or would neglect reasonable precautions, in view of the appearance and atmospheric conditions, to prevent the traveler being moved by the wind. The storm is spoken of in argument as a tornado or wind storm of such great

or unusual violence as could not be anticipated. The evidence for the plaintiff was that the wind was no more than a good, strong breeze, and there was no evidence on either side that it amounted to a tornado. The town of Thebes, with a population of 1500, consisted of ordinary frame houses, and no particular damage was done to any of the buildings, trees or structures. There was no evidence from which the court could say that the wind exceeded anything which could be anticipated, and the court did not err in refusing to direct the verdict.

Complaint is made of an instruction given at the instance of plaintiff, stating, in substance, that if the defendant was guilty of the negligence charged in the declaration, and such negligence directly contributed to the accident, and the accident would not have occurred except for such negligence, then the fact that the storm also contributed and helped to cause or was the principal cause of the accident was not a defense. There is no claim that the legal principle stated was not correct or that the fact of the traveler being moved by the wind would relieve the defendant from the consequences of its own negligence, but counsel say that if the wind storm was the principal cause of the accident and the failure to fasten or tie up the traveler was the secondary cause, and the principal cause could not have been foreseen or anticipated, the plaintiff could not recover. That proposition is true, but the instruction is not subject to the objection. It required the jury to believe, from the evidence, that the defendant was guilty of the negligence charged in the declaration, and the court advised the jury, in various instructions, that there was no negligence if the wind storm could not have been foreseen and anticipated.

Another instruction stated the rule that if a master confers authority upon one of his employees to take charge and control of workmen, such employee, in respect to his authority, is a representative of the master, and all his commands within the scope of his authority are, in law,

commands of the master. It is urged that the instruction was not accurate in saying that such an employee, acting as a foreman, is not a fellow-servant of other employees. It is true that a foreman may occupy a dual position, and in some of his acts may be a mere fellow-servant while in others he may be the representative of the master; but there could be no question in this case that Brown was not a fellow-servant to Miller in respect to his commands and directions to the men who were moving the traveler.

The court refused a number of instructions offered by the defendant, and it is urged that they ought to have been given. One of them stated that no juror should be persuaded by his brother jurors to consent to a verdict which did not meet with his own judgment and conclusions after due deliberation with his fellow-jurors and a full consideration of all the evidence, facts and circumstances in the case and the law given to the jury in the instructions of the court. The instruction was properly refused, as giving the support and endorsement of the law and the court to obstinacy on the part of individual jurors and thereby encouraging a disagreement. (*Chicago and Eastern Illinois Railroad Co.* v. *Rains,* 203 Ill. 417; *City of Evanston* v. *Richards,* 224 id. 444.) We would not be justified in reviewing at length and in detail each of the other refused instructions, but it may be said, generally, that every principle of law applicable to the case in favor of the defendant was given to the jury in the instructions. In fact, the court was too liberal toward the defendant in assuming as a fact that there was a violent wind storm or tornado. The only material and controverted question in the case was whether the defendant, acting through its foreman, was guilty of negligence in not having the traveler securely fastened, and the court instructed the jury that the burden of proof of the negligence charged was upon the plaintiff and not upon the defendant; that there was no presumption of negligence against the defendant, but the plaintiff

was bound to make out his case by a preponderance or greater weight of the evidence; that the jury had no right to disregard that rule, and if the plaintiff failed to make out his case under that rule the jury should find the defendant not guilty; that the burden of proof was upon plaintiff to show not only that the defendant's foreman saw the approach of the wind storm or tornado in time to have secured and made the traveler fast to the false work, but the plaintiff was further bound to show that the foreman might, by the exercise of ordinary care, have foreseen the effect if the traveler was left unsecured and it was within his power to have secured the traveler in the usual and ordinary way; that in the absence of competent evidence that this might have been done the jury must find the defendant not guilty; that if the death of the deceased was occasioned by an accident which by the exercise of ordinary care could not have been foreseen or anticipated the plaintiff could not recover and the jury must find the defendant not guilty, and that if the wind storm was of such an unusual, violent and tempestuous character that it could not have been anticipated by ordinary care, then the accident was an act of God and unavoidable and the jury must find defendant not guilty. These rules were repeated in many instructions, which impressed upon the jury, by repetition and varying language, everything which the defendant was entitled to. There was no error in ruling on instructions.

The plaintiff's attorney, in commenting on the approaching storm and the probability of injurious consequences, said to the jury that the conduct of the foreman in the face of the apparent danger, and even with his attention called to it, was almost criminal. The defendant's attorney objected to the argument and the court overruled the objection. It was a fair subject for argument whether the conduct of the foreman in not doing anything to secure the traveler but waiting and taking the chances was extreme

in character, and there was no impropriety in the attorney arguing that it almost amounted to criminality.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*