**Horace P. Deacon, Appellee, v. Kelly-Atkinson Construction Company, Appellant.**

**Gen. No. 17,870.**

1. MASTER AND SERVANT—*when foreman does not assume to be a fellow-servant.* Where a foreman in special charge of the hoisting machinery of a structural steel construction company caused a hook through which a cable ran to be attached to a tower, ordered plaintiff, a construction workman, to assist in the hoisting, and when the hoisting was started by the foreman's order the hook became

108    APPELLATE COURTS OF ILLINOIS.

Deacon v. Kelly-Atkinson Construction Co., 177 Ill. App. 107.

unfastened, resulting in the cable striking the plaintiff, the mere fact that the foreman was not upon the ground and did not initiate the movement of the hoisting apparatus does not tend to show that he had laid aside his position of foreman and assumed the character of colaborer with plaintiff.

2. MASTER AND SERVANT—*negligence in management of hoisting apparatus.* Where a foreman in charge of the hoisting apparatus of a structural steel construction company caused a hook through which a cable ran to be attached to a tower and ordered plaintiff, a construction workman, to assist in the hoisting, and he knew or should have known that the hoisting apparatus was not in condition to permit hoisting in safety or that attaching the hook to the tower was an improper manner of doing the work, and ordered the starting of the engine which resulted in the hook becoming detached and the cable striking the plaintiff, the foreman is guilty of negligence, and such negligence is that of the company.

3. DAMAGES—*when $6,500 for fractures is not excessive.* A plaintiff was thrown from a bridge and received a fracture of the leg which remained out of alignment, of a bone in an elbow, of a rib and of the outer table of the skull. The injuries necessitated eight weeks confinement in a hospital and further treatment thereafter and were likely to be permanent. *Held,* a verdict for $6,500 was not excessive.

Appeal from the Superior Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed January 28, 1913. *Certiorari* denied by Supreme Court (making opinion final).

SHOPE, ZANE, BUSBY & WEBER, for appellant.

DAVID K. TONE and H. M. ASHTON, for appellee.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

This is a suit for personal injuries, brought by appellee (plaintiff) against appellant (defendant). There was a trial before the court and a jury. The jury found a verdict in favor of the plaintiff in the sum of $6,500, upon which judgment was entered, and from such judgment this appeal is taken.

The plaintiff was a member of a construction gang employed by defendant in structural steel work upon a railway bridge over the north branch of the Chicago

river at Kinzie street, in the City of Chicago.   Prior to the accident two steel towers had been constructed on the east side of the river, which there runs north and south, one tower at the northeast corner and the other tower at the southeast corner of the bridge.   The towers were about 35 feet apart, and were made up of lattice work or lacings on the side.   Between the two towers, across from one to the other, were two girders.   The lower girder, upon which the accident happened, was a box girder, about three feet square and about 25 feet from the ground, made up of lattice work. It was hollow on the inside.   The upper girder it would appear from the evidence was ten feet or more above the lower girder.   At the time of the accident a steel plate was being hoisted.   This was done by means of a derrick upon a derrick car, which stood east of the towers, the car having its wheels blocked and being fixed in its place upon the track.   The derrick upon the derrick car consisted of an A frame made up of two upright posts inclined together, between which was a mast fixed on pivots, and attached to the mast was a boom.   Guiding lines were used to swing the boom and were operated by spools on one of the drums of the engine.   There were two drums on the engine, one of which wound and unwound the cable that lowered or elevated the outer end of the boom, and the other wound and unwound the hoisting cable which lifted the load to be hoisted.   At the time of the accident the outer end of the boom, which was 75 or 80 feet long, extended upwards from the derrick car above the upper strut or girder and towards the west of the girder.   The derrick car had been fixed in its place and the end of the boom had been swung as far north as possible.   The hoisting line hung from the end of the boom over a wheel down to the ground and on the west side of the two girders.   At this time, one Jones, who was assistant foreman of the work, and who appeared to have had special charge of the operations of the hoisting machinery, stood on the first or

lower girder. In order to hoist a steel plate to be used as a brace or stiffener between the two trusses, without changing the position of the derrick car, Jones had previously caused to be attached to the lace work of the tower, some distance above the point where the plate was to be inserted between the girders, a set of blocks.

The plaintiff testified that he had been working putting in bolts just prior to the accident, and was waiting for the plate to come up; that he was then ordered by Jones to come and help; that he started to walk on the girder or strut, towards where Jones was, when he was struck; that he could not say whether it was the cable or chain that struck him, and that he was unable to say what happened after that, until he recovered consciousness at the hospital some days later. Orville Sweeney, a witness for the defendant, and other witnesses testified that the cable struck him.

While the testimony of the witnesses is not entirely harmonious as to the details of the operation of raising the plate, it seems to be clear that the signal to the engineer to start the engine was given by Jones. It is claimed by the defendant to be disclosed by the evidence that Jones was not in position to see the plate, and that he merely passed on to the engineer the signals received from one Fornwald, who apparently was in the hollow of the girder, hammering the plate and otherwise assisting in the endeavor to get it to the required position. One Carl Sweeney directed the course of the plate from below and probably indicated when the plate was ready to be lifted.

Two questions of fact which under the declaration the jury were called upon to determine were, first, whether the hook that was attached to the tower and through which the cable ran when the plate was being hoisted, was insecurely and improperly fastened to the tower, and whether, for that reason, the hook became detached; second, whether the appellant was guilty of negligence in operating the derrick, the plate and

the cable at the time of the accident, and in that way caused the fastening of the hook through which the cable ran to give way; and the further question of whether or not plaintiff himself was guilty of negligence contributing to the accident.

It is the contention of the defendant that there should have been a verdict directed for the defendant; that its motion for a new trial should have been granted; that the verdict was contrary to the evidence; that there was contributory negligence on the part of plaintiff; that there was error in the instructions, and that the damages are excessive.

A large part of the argument is devoted to the question as to whether or not Jones and Deacon were fellow servants. In the case of Devine v. Kelly-Atkinson Const. Co., 156 Ill. App. 602, it was held that "if the accident was due to the foreman's negligence in giving the wrong signal, then the doctrine of assumed risk cannot be invoked, inasmuch as the risk of negligence on the part of the master personally or of his representative, the foreman, *not a fellow servant"* (the italics are ours) "is not assumed." The case last referred to was heard in this branch of this court and based upon the authority of Malloy v. Kelly-Atkinson Const. Co., 240 Ill. 102; Casey v. Kelly-Atkinson Const. Co., 240 Ill. 416, and earlier decisions. It is argued that the case now under consideration comes within the principle announced in Chicago & A. R. Co. v. May, 108 Ill. 288, that when a foreman lays aside his position as foreman and assumes the character of a co-laborer with the party injured, he at once becomes a fellow servant; and it is further urged that the opinion in the case of Devine v. Kelly-Atkinson Const. Co., *supra,* is not a correct statement of the law notwithstanding it would appear that a writ of certiorari was denied by the Supreme Court.

The argument of defendant is, as we understand it, that because the signal to start the engine was given by Fornwald and passed on to the engineer by Jones,

112     APPELLATE COURTS OF ILLINOIS.

Deacon v. Kelly-Atkinson Construction Co., 177 Ill. App. 107.

that therefore Jones was acting merely as a fellow servant with Fornwald and also with the plaintiff and other employees who were about the work at that time. We do not agree with this contention. We think it was the duty of Jones, as foreman, to see that the hoisting apparatus was in proper shape to permit the load safely to be carried. From the record it would appear that he was in a position where he could see the hook that was attached to the lattice work of the tower and through which the cable ran. The evidence tended to show that it was he who gave the order to attach the set of blocks to the lace work of the tower and it is substantially admitted that it was he who ordered the engineer to start the engine. The mere fact that he was not upon the ground and did not initiate the movement of the hoisting apparatus does not, in our opinion, tend to show that he had laid aside his position of foreman and assumed the character of a co-laborer with the plaintiff. Thomas Reilly, the general foreman in charge of the work, testified that "Jones had authority to give orders to the men and when he gave those orders they were supposed to obey them."

Jones, if plaintiff's testimony is to be believed, ordered plaintiff to leave his other work and come to where the plate was to be placed. If at that time Jones knew or should have known that the hoisting apparatus was not in condition to permit the plate to be hoisted in safety, or that attaching the hook to the tower was an improper manner of doing the work, and notwithstanding that ordered the engineer to start the engine, we think he was guilty of negligence and that such negligence was the negligence of the company.

The one instruction complained of was tendered by the plaintiff, and the criticism of it relates to the question as to whether or not Jones was a fellow servant. We think the instruction was properly given.

We do not think the damages awarded are so ex-

cessive as to require a reversal of the judgment. The plaintiff was thrown from the bridge and received a fracture of the leg, and also a fracture of a bone in elbow, a fracture of the rib and of the outer table of the skull. These ailments required eight weeks' confinement in the hospital and further treatment thereafter. There was also testimony tending to show that the bone of the leg after the accident was "out of alignment." The evidence further showed that plaintiff sustained injuries, which are likely to be permanent.

The question of contributory negligence was one properly submitted to the jury, and we find nothing in the record tending to indicate that there was negligence on plaintiff's part which contributed to the accident.

The judgment will be affirmed.

*Affirmed.*