RULE COTTON OIL CO. v. RUSSELL.
(No. 8501.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 13, 1917. Rehearing Denied Feb. 10, 1917.)

1. TRIAL ☞252(11)—ACTION FOR INJURY TO SERVANT— INSTRUCTION — SUFFICIENCY OF EVIDENCE.

Evidence *held* sufficient to justify an instruction in an action for injury to servant caused by other cars colliding with the car in which plaintiff was working, that the cars were not coupled together, and that it was the employer's duty to keep them coupled.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 603; Dec. Dig. ☞252(11).]

2. MASTER AND SERVANT ☞278(18)—ACTION FOR INJURY TO SERVANT—VERDICT SUPPORTED BY EVIDENCE.

In an action for injury to employé resulting from employer's negligence in not setting brakes on freight cars and coupling them together, evidence *held* sufficient to sustain a verdict for the plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 969, 971; Dec. Dig. ☞278(18).]

3. MASTER AND SERVANT ☞111(1)—MASTER'S DUTY—RAILROAD CARS.

Where plaintiff was employed by defendant to unload freight cars, it was the employer's duty to use all reasonable precautions to keep other cars from rolling down a grade siding and colliding with the car in which plaintiff worked.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215, 255; Dec. Dig. ☞111(1).]

4. MASTER AND SERVANT ☞286(32)—INJURY TO SERVANT—MASTER'S NEGLIGENCE—QUESTION FOR JURY.

Where the evidence showed that if the employer had coupled coal cars together they would not have collided with the car in which plaintiff worked, and injured him, the question of whether the employer was negligent in not doing so was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ☞286(32).]

5. MASTER AND SERVANT ☞90—DANGEROUS OCCUPATION—DUTY OF MASTER.

Where an employé is engaged in a dangerous service, it is the master's duty to use all reasonable and necessary means to protect him against any danger which might reasonably be expected to arise from extraneous causes, and the greater the peril to the servant, the greater the degree of care exacted of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 139; Dec. Dig. ☞90.]

Appeal from District Court, Haskell County; Jno. B. Thomas, Judge.

Action by J. W. Russell against the Rule Cotton Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed.

J. M. Wagstaff, of Abilene, W. R. Chapman, of Anson, and Chas. E. Coombes, of Stamford, for appellant. W. H. Murchison and Clyde F. Elkins, both of Haskell, and David B. Trammell and Theodore Mack, of Ft. Worth, for appellee.

CONNER, C. J. As the case went to trial this suit was one by the appellee Russell against appellant, the Rule Cotton Oil Company, to recover damages resulting from personal injuries. As alleged and substantially shown by the evidence, appellee, as one of appellant's workmen, was engaged in unloading cotton seed out of a car that had been spotted on a switch track leading to appellant's cotton oil plant. The switch track extended in the general direction of north and south. The track connected with the main line of the Kansas City Mexico & Orient Railway some 400 or 500 feet south of the car in which the plaintiff was at work, and to the latter point there was a distinct down grade. On the occasion in question, the railway company was engaged in switching one or more cars loaded with cotton seed which were "kicked in" on the switch track from the south end. Some distance to the north two loaded coal cars were standing on the switch track; yet farther north were one or more other cars which were also spotted on the switch track between the coal cars and the car in which the plaintiff was at work. When the two cars of cotton seed were kicked in on the switch track at its south end, they progressed until they came in contact with the two coal cars mentioned. The cars loaded with cotton seed coupled to the first coal car, and these cars rolled but a short distance and stopped. The coal car farthest to the north, however, continued to roll, and, gathering momentum, struck the other cars that had been spotted on the switch track north of the coal cars and south of the car in which the plaintiff was at work, and all then proceeded north with sufficient momentum to break some of the couplings, and struck the car in which plaintiff was at work, threw him out, and injured him.

The plaintiff alleged negligence on the part of the cotton oil company in a failure to warn him of the danger involved in the switching, and in a failure to have the brakes on the two coal cars properly set, and to have these two cars coupled together. The defendant replied by a general denial and a general plea of assumed risk, but the trial upon the issues indicated resulted in a final judgment for the plaintiff in the sum of $7,500.

[1] Appellant presents but two assignments of error. The first reads as follows:

"The court erred in the main charge to the jury as one of the grounds of recovery against this defendant that they might find against this defendant in case they found that the defendant negligently failed to couple the cars on the siding, there being no evidence to justify said charge and there being no evidence to show that it was the duty of the defendant to keep the cars coupled." ·

---

The sufficiency of the evidence to authorize the conclusion that the coal car farthest north was not coupled to the one just south can hardly be disputed. To illustrate: The brakeman who did the switching when the cars loaded with seed were kicked in on the switch track testified, among other things, that:

"There were some three or four cars between the one we coupled into and the one in front of the seed conveyor. There were two coal cars and one or two box cars between me and the seed conveyor. We coupled into the coal car, and it stopped, and the cars I was on stopped. Of course if the other coal car had been coupled into the one we coupled into it would have held it, and it would have stopped also. That coal car went on down south, some 90 feet, I guess, before it hit the box cars. As to whether it gained in speed, will say it was running down grade."

Indeed, it is assumed in appellant's proposition under the assignment that this coal car was not coupled, and while it seems no witness testified that it was the specific duty of the appellant company to couple cars, it was undoubtedly its duty to exercise at least ordinary care to provide the plaintiff with a safe place to work, and to that end to do all things that a reasonably prudent and careful person would do to accomplish the result. The evidence shows that the switch track was intended for the exclusive use of the oil mill company; that as cotton seed, coal, and other material needed by the oil company was shipped in over the railway, the cars into which such material was loaded were placed by the railway company upon the switch track described, and spotted at such places as the employés of the oil mill company indicated. A Mr. McElreath was appellant's superintendent, and the testimony shows that it was his duty to "keep the mill up in first-class shape to get the best results, load and unload cars, or have it done; in fact, to look after everything that came up to keep the mill in operation," and "to see and know about the placing of cars on our switch track there." Mr. McElreath testified, among other things, that:

"It was the custom of the oil mill to always set the brakes on the cars we were loading or unloading. * * * Sometimes on the north end of the track we leave loaded and unloaded cars without setting the brakes. We did not do that on the south end. It was not only our custom, but our duty, to set the brakes and see that they were set."

This witness further testified that on the occasion in question he knew that the company had some loaded cars of seed at the station and knew that the next thing to do with the cars would be to drop them in on the switch. He said:

"I did not know whether they would put them in there or not. They usually did. I knew that following the usual custom they would drop the cars in there that day. * * * I knew at that time that this deaf and dumb employé [the plaintiff] was at work unloading seed. I knew that he was depending on me to give him warning in the event of any danger of anything. I believe there were two coal cars on the siding that morning. The end of the last coal car south was about even or opposite the north end of the hullhouse. It was about 130 yards from the south end of the switch to the south end of the hullhouse. * * * These two cars were standing together. I think they were coupled together, but I am not certain. * * * Those cars in between the coal cars and the car Russell was in were not coupled together. It set one of the coal cars in motion and two other cars in motion, and set the car Russell was in in motion, and went on some distance north with sufficient force and speed to partially knock the trucks from under another car. * * * I would guess it was about 120 feet or something like that from the north end of the last coal car down to the south end of the one Russell was working in. * * * During the time that Mr. Russell worked under my management he never did have anything to do with the setting of brakes on the cars. The only way he could have known whether the cars were coupled together or the brakes set would be to be out and look at them. That wasn't any part of his duty."

[2-5] Without quoting further from the evidence, we think it will be sufficient to say that it has been carefully examined, and as presented to us we think it fully sufficient to support the verdict of the jury upon all of the issues of negligence presented in the plaintiff's petition. It was the duty of appellant, in the operation of its grade switches, down which cars would roll by force of gravity and collide with the car in which the plaintiff was at work, to use all reasonable precautions to secure such cars against starting or against escaping from control. There is clear evidence to the effect that if appellant had adopted the precaution of having the coal cars coupled together the accident would not have happened, and we think it was for the jury to say whether appellant was negligent in not having adopted this among other precautions. As said in the case of Missouri Pacific Railway Co. v. Watts, 63 Tex. 549:

"Where the employé is engaged in a dangerous service, it is the duty of the master to use all reasonable and necessary means to protect him against any superadded danger that might be reasonably expected to arise from extrinsic causes. In such cases the greater the peril to the servant on account of the nature of the service, so also the greater the degree of care and prudence exacted of the master in protecting him against an increase of the danger arising from extrinsic causes."

In the case of Continental Trust Co. v. Toledo, St. Louis & K. C. Railway Company, 87 Fed. 133, 32 C. C. A. 44, the Circuit Court of Appeals for the Seventh Circuit said:

"The master's duty is to exercise ordinary and reasonable care to furnish a reasonably safe working place for his employé, having regard to the danger of the service and the peril to which the employé will be exposed from the failure to exercise such care. From the brief review of the facts which we have given, we feel no doubt that the master failed in the performance of his duty. The grade of the coal track rendered it a dangerous location on which to place 15 or 16 heavily loaded cars without any means of preventing their escape onto the main track, except by the setting up of the brake on the car nearest thereto. The appellant, even if a derail switch or blocks were not necessary, might and ought to

have secured the cars by having the brakes set up on each of them. Instead of that, the rule of the appellant only required the brakes to be set up on the one car nearest to the main track. He knew the character of the grade on the coal track, and the danger of cars escaping therefrom onto the main track, and, with this knowledge, he failed to exercise proper care to guard against it."

See, also, G., H. & S. A. Ry. Co. v. Johnson, 24 Tex. Civ. App. 180, 58 S. W. 622 (writ denied 94 Tex. 705, 59 S. W. xv); Wellington v. Pelletier, 173 Fed. 908, 97 C. C. A. 458, 26 L. R. A. (N. S.) 719; Continental Trust Co. v. Toledo, St. L. & K. C. Ry. Co., 87 Fed. 133, 32 C. C. A. 44; Casey v. Kelly-Atkinson Construction Company, 240 Ill. 416, 88 N. E. 982; Moyse v. Northern Pac. Ry. Co., 41 Mont. 272, 108 Pac. 1062; Jones v. Kansas City, F. S. & M. R. R. Co., 178 Mo. 528, 77 S. W. 890, 101 Am. St. Rep. 434; Koerner v. St. Louis Car Company, 209 Mo. 141, 107 S. W. 481, 17 L. R. A. (N. S.) 292; International & G. N. Ry. Co. v. Walters (Sup.) 179 S. W. 854; 3 Labatt's Master & Servant, § 1111, pp. 2924–2926; Id. § 1110, pp. 2921, 2922; Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; Texas Brokerage Co. v. John Barkley & Co., 49 Tex. Civ. App. 632, 109 S. W. 1001; Scott v. Texas Central R. Co., 60 Tex. Civ. App. 281, 127 S. W. 849; Cone v. Belcher, 57 Tex. Civ. App. 493, 124 S. W. 149; Citizens' Ry. Co. v. Griffin, 49 Tex. Civ. App. 569, 109 S. W. 999.

Appellant's remaining assignment urges error in the action of the court in refusing to give a peremptory instruction in its favor on the ground that there was "no sufficient evidence of negligence on the part of the defendant to authorize the case to be submitted to the jury." We think what we have already said is sufficient to dispose of this assignment.

Both assignments of error are, accordingly, overruled, and the judgment is affirmed.