# Finkbeiner, Appellant, *v.* Solomon.

*Negligence—Dynamite—Infant—Proximate cause—Nonsuit.*

In an action to recover damages for personal injuries to a boy nine years old, it appeared that the injury was the result of an explosion of dynamite caps. Some time prior to the accident the plaintiff, who was the father of the boy, purchased from defendant a lot of land, and also a frame barn on another lot. He subsequently moved the barn on to the lot which he purchased, and in doing so carried along in the barn some of the effects of the defendant. Subsequently he notified the defendant that he would need the barn, and the latter moved out

the greater part of his effects, leaving only a few small items. A few days afterwards while the plaintiff's son and some other children were playing in the barn, a much younger child than the boy injured found upon a dark shelf in the barn a tin box containing dynamite caps. The older boy took the caps, and while attempting with a stone to drive a nail through one of them the cap exploded, and the boy was severely injured. *Held*, (1) that the injury was not the proximate result of the act of the defendant in leaving the caps in the barn, but was caused by the unrelated act of a third party; (2) that the leaving of the caps upon a dark shelf in the barn was not in itself a negligent act; (3) that it was the duty of the plaintiff in taking possession of the building and moving it upon his own lot to inspect its contents and remove anything dangerous before permitting his children to use it.

Argued May 4, 1909. Appeal, No. 74, Jan. T., 1909, by plaintiff, from order of C. P. Potter Co., Dec. T., 1906, No. 17, refusing to take off nonsuit in case of John Finkbeiner and Walter Finkbeiner, minor child of John Finkbeiner, v. A. Solomon. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries to a boy nine years old. Before ORMEROD, P. J.

The circumstances of the accident are set forth in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*A. S. Heck*, with him *C. C. Vandeboe*, for appellant.—In determining the defendant's liability the law relating to his duty in caring for dangerous and highly explosive substances, and the duty that he owed to children to protect them from danger should be considered: Rachmel v. Clark, 205 Pa. 314; Powers v. Harlow, 51 Am. Rep. 154; Hydraulic Works Co. v. Orr, 83 Pa. 332.

The cases in which Hydraulic Works v. Orr has been referred to and discussed are as follows: Gramlich v. Wurst, 86 Pa. 74; Gillespie v. McGowan, 100 Pa. 144; Schilling v. Abernethy,

112 Pa. 437; Biddle v. Railway Co., 112 Pa. 551; Arnold v. Railroad Co., 115 Pa. 135; Westerberg v. Kinzua Creek, etc., Railroad Co., 142 Pa. 471; Corbin v. Philadelphia, 195 Pa. 461; Enright v. Railroad Co., 198 Pa. 166; Rachmel v. Clark, 205 Pa. 314; Duffy v. Sable Iron Works, 210 Pa. 326.

*W. K. Swetland,* with him *W. F. DuBois,* for appellee.— Where an independent intervening cause interrupts the natural sequence and causal connection between the original act of negligence and the injury, the intervening cause becomes the approximate cause and the author of the negligence is not liable: Herbstritt v. Lackawanna Lumber Co., 212 Pa. 495; Curtin v. Somerset, 140 Pa. 70; Bannon v. R. R. Co., 29 Pa. Superior Ct. 231; Fitzmaurice v. Fabian, 147 Pa. 199; Congregation v. Smith, 163 Pa. 561; Tutein v. Hurley, 98 Mass. 211; Gudfelder v. Ry. Co., 207 Pa. 629; Harriman v. Pittsburg, etc., Ry. Co., 45 Ohio, 11 (12 N. E. Repr. 451); Penna. R. R. Co. v. Hope, 80 Pa. 373; Hoag v. Lake Shore, etc., R. R. Co., 85 Pa. 293; Penna. R. R. Co. v. Kerr, 62 Pa. 353.

Opinion by Mr. Justice Potter, June 22, 1909:

This was an action of trespass brought by John Finkbeiner and his minor child, Walter Finkbeiner, against A. Solomon to recover damages for personal injuries alleged to have been sustained by Walter Finkbeiner through the negligence of the defendant.

In 1905, Finkbeiner purchased from Solomon a house and lot in Shingle House borough, Potter county, and also a frame barn located on another lot, which was moved by the purchaser to the lot previously bought by him, within a short distance of the house. At the time of the purchase of the barn, Finkbeiner did not have immediate use for it and he gave permission to Solomon to leave in the barn certain "stuff," boxes, wood and pails and a lot of different items, which were stored there. In October, Finkbeiner moved into the house, having previously given Solomon notice that he would need the barn. About October 9 or 10, Solomon moved out the greater part of his stuff from the barn, leaving only a few small items.

On October 15, 1905, Walter Finkbeiner, who was nine years old, was playing in the barn with some other children. One of them, a much younger child, found some dynamite caps, in a tin box, and the other children apparently appropriated them. The injured boy testified that he showed the caps to his mother, who thought they were exploded cartridges or bullets. The boy attempted with a stone to drive a nail through one of the caps, causing it to explode. Two fingers and the thumb of his left hand were so injured by the explosion, that amputation was necessary. At the trial of the case, a judgment of compulsory nonsuit was entered, which the court refused to take off. In his opinion, the trial judge says, "The defendant was rightfully using the barn for storage purposes. It cannot be said that the barn was an improper place to store the dynamite cartridges. There was no danger to be anticipated from the caps if not interfered with. It may be assumed that it was necessary to keep them in a dry place. He placed them where they were unlikely to be discovered." And he further adds, "Can it be said that the placing of a box two inches and two and one-half square, by one inch in depth, in a dark place upon a beam in a barn can be such negligence that the jury should be permitted to say that it was natural and probable that the children playing about the barn would discover it? But assuming that the jury should find that it was negligent in the defendant to leave them where he did, how can it be said that the injury to the plaintiff was the natural and proximate consequence of his act?" He then points out that the injury to the plaintiff, was brought about by the discovery and taking possession of the box of caps by another small boy, who turned it over to his playmates. The court says, "Had the box been left where it was put by the defendant no accident would have occurred. We think this is such an intervening cause, as broke the causal connection between the alleged negligence of the defendant and the injury to the plaintiff."

Our examination of the testimony leads us, upon the whole, to coincide with the conclusion of the trial judge. The facts of the case bring it close to the line of what might be deemed

negligence, but we cannot say that the view taken by the court below was wrong. It cannot be said that placing a box of such caps upon a dark shelf in a barn, is in itself a negligent act. If defendant had thrown the caps out, loosely, where children were likely to play, and would be apt to find them, the case would have been very different. We think the facts of this case bring it within the principle of Marsh v. Giles, 211 Pa. 17, where it was held that the injury to the plaintiff was caused by the unrelated act of a third party and was not a probable consequence of the defendant's act. The present case is even nearer in its facts, to those in Swanson v. Crandall, 2 Pa. Superior Ct. 85, where as set forth in the syllabus, "the evidence disclosed the following facts: A loaded revolver was kept in the upper drawer of a chiffonier, which was used exclusively by the head of the family, and in his absence from the room, while his wife was in bed with her face averted, a five years' old child in quest of play, discovered and accidentally discharged the revolver to the plaintiff's injury. Held, That placing the revolver in the drawer was not the natural and probable or proximate cause of the injury, and, the evidence being undisputed, the jury should have been instructed to find for the defendants."

In the opinion, ORLADY, J., said (p. 90): "As placed by Crandall the revolver was perfectly harmless, and, save for the intervention of baby fingers, would not have caused the injury. Its discovery by the child could not have been reasonably anticipated by him. He was not present at the time of the accident. The wife was not negligent in giving the care of Evelyn to the nurse girl, and had the right to expect that attention would be so given as to prevent injury to either child. In the moment of time following the dressing of the little girl, the plaintiff could not be charged with contributory negligence in its legal sense. The unfortunate occurrence was an event which resulted undesignedly and unexpectedly, and which could not have been reasonably anticipated as a usual and natural result."

If the plaintiff in the case at bar had left a scythe, or an axe, in the same place at which the box of caps was left, and the

VOL. CCXXV—22

children had found it, and succeeded in getting it down, and playing with it, to the injury of one of their number, the want of causal connection between the act of the defendant and the injury, would have been more apparent. There was nothing wrongful in the placing of the caps in the barn, in the first instance, at the time and place where the box was placed. Afterwards, when the father of the boy who was injured took possession of the building and moved it upon his own lot, where his children were liable to enter it in play, the duty would seem to have been upon the parent to inspect what was then his own building, and look out for anything which might be dangerous, before permitting his children to use it. The defendant was not then in possession, or in charge of the building.

The assignment of error is overruled, and the judgment is affirmed.