[No. 8629.  Department Two.  July 8, 1910.]

DEWEY CRABB, *a Minor, by His Guardian Ad Litem, T.*
*Crabb, Appellant,* v. W. E. WILKINS, *Respondent.*[1]

EXPLOSIVES — NEGLIGENCE — CARE AS TO CHILDREN — EVIDENCE —
QUESTIONS FOR JURY. It is for the jury to determine whether a well
digger had exercised the highest degree of care in the use of dyna-
mite in a locality where children congregated, where it appears that
his operations were carried on within ten feet of the usual route of
school children who were accustomed to go from the school house to
the post office during the noon recess, that on one such occasion
school boys found four dynamite caps on the ground about
twenty-five feet from the drill, that the defendant kept the caps in a
tool box, only taking out such number as he desired to use, that they
were often used by his workmen in his absence, and he had never
cautioned or instructed them in regard to the care of the explosives;
the inference being that the caps were left there as a result of the
work and through the agency of the workmen (RUDKIN, C. J., dissent-
ing in part).

Appeal from a judgment of the superior court for Adams
county, Canfield, J., entered December 1, 1909, granting a
nonsuit in an action for personal injuries sustained by a child
through the explosion of dynamite caps. Reversed.

*W. W. Zent* and *John M. Cannon,* for appellant.

*Lovell & Davis,* for respondent.

DUNBAR, J.—This is an action for damages for personal
injuries. On March 17, 1909, respondent owned a well drill
and appliances, and on that date and prior had been engaged
in drilling a well in the town of, or near, Othello, Adams
county, Washington, at a point close to a street about four
hundred feet from the public school of that place, and on the
usual and customary route of travel for school children at-
tending that school, in going to and returning from the post
office. This statement of the case is made by the appellant,
and is criticized by the counsel for the respondent as not be-

[1]Reported in 109 Pac. 807.

ing a correct statement of the case, and it is insisted that the
testimony does not show that the well drill outfit was on the
usual and customary route of travel for school children com-
ing to that school.   But an examination of the record con-
vinces us that the statement of the appellant is substantially
correct, as shown by the testimony of Dewey Crabb on page
23 of the record, where he stated that, in going from the
school to the post office, he would walk within ten feet of the
well drilling outfit, that the other boys in going from the
schoolhouse to the post office would walk within the same
distance, and that they made a trip to the post office from the
schoolhouse every day.   It also appears that there was no
other drill using explosives within half a mile of the place.

In making one of these trips on March 17, 1909, during
the noon recess, and in returning from the post office, the
appellant, Dewey Crabb, a boy ten years old, in company
with three other boys, found four dynamite caps on the
ground, about twenty-five feet from the drill.   They put
these caps in their pockets, took them to the schoolhouse
and exploded two of them, whereby the appellant's hands
were both very badly mangled.   Some of the fingers were
blown off and others were injured, and there was only one
finger on each hand that was left without injury.   The tes-
timony of W. E. Wilkins, the respondent, on behalf of the
appellant, was to the effect, that he kept these caps in a tool-
box or chest; that the drilling machine was inclosed only for
the purpose of protecting it from the weather.   It does not
appear from the testimony that it was inclosed so that an
entrance to it was not available to any one passing by.

Upon the close of the plaintiff's testimony, motion was
made by the defendant to instruct the jury to bring in a
verdict for the defendant, for the reason that the proof of-
fered by the plaintiff was insufficient; that it did not show a
relationship between the master and the servant, nor did it
show that the injury to the plaintiff was the direct effect of
the negligence of a servant acting within the scope of his em-

ployment. An argument of considerable length was made before the court by both the attorney for the respondent and the attorney for the appellant, and the court, after taking he matter under advisement, finally reached the conclusion, that there was sufficient testimony to show the injury; that there was no showing of contributory negligence on the part of the plaintiff, but that the negligence in placing the caps where they were available to children was not brought home to defendant; and on that ground the motion was sustained.

There can be no question that the negligence of the servant in such a case as this must be imputed to the master, and we will not discuss that question further. In handling explosives the law imposes upon the operator a high degree of care, and especially so where children are involved. Unfortunate as the results prove, it is undoubtedly true that explosives of this character are exceedingly attractive to small boys, whether on account of the loud noise that follows the concussion, or from a commendable appreciation of the quick and effective results, we know not. But the fact remains that the attraction is so controlling that it must be taken into consideration by people who are using the dangerous explosives in a locality where children congregate; and in this case it is shown that the boys were in the habit of going by this well drill, and of stopping there and talking with the operatives. It is contended by the respondent that his testimony shows that he was not guilty of negligence, from the fact that he kept, as he stated, these fulminating caps in a tool chest, only taking out such numbers as he desired to use when he was preparing for an explosion. But under the rule announced by this court in *Olson v. Gill Home Inv. Co.*, 58 Wash. 151, 108 Pac. 140, this precaution was not sufficient. In addition, the witness also testified that he did not instruct the workmen in regard to the care of these explosives, where to keep them, or how to use them, because, as he states, they were men experienced in the work, and he presumed they knew their business, or words to that effect. He

also testified that these caps were used frequently when he was not present. So that the only real question there is in the case was the one upon which the court took the case from the jury.

But we think that the court erred in this respect, and that there was sufficient testimony to go to the jury on that proposition, and that while there was no direct testimony concerning the manner in which these caps found their way to the place where the boys obtained them, it was a reasonable and natural inference, which the jury would be warranted in drawing from the facts proven, that they came there as a result of the work which was going on in that place and in which they were used, and through the agency of the men who were operating the drill. In *Klepsch v. Donald,* 8 Wash. 162, 35 Pac. 621, we held that, where the question arose as to whether the rock which killed Klepsch was thrown from the defendant's works or whether it came from another blasting operation which was in progress during the same period, was a question for the jury to determine. It was also held in that case that it was not a sufficient answer for the operator to show that he had given his employees strict general instructions to be careful, or that the employees were competent and usually careful men; while in this case, as we have seen, the respondent himself testified that no such instructions had been given to the employees as to their duty during his absence.

The judgment will be reversed, with instructions to try the cause.

Crow, Parker, and Mount, JJ., concur.

Rudkin, C. J. (dissenting)—I concur in the majority opinion in so far as it is based on the facts disclosed by the appellant's testimony, but if it should appear that the box containing the dynamite caps was kept by the respondent in his tool box in the shed enclosing the drilling machinery, and the caps were extracted therefrom by a trespasser or a thief, whether adult or minor, I am of opinion that respond-

ent is not liable for the consequential injuries, and in so far as the majority opinion holds or intimates to the contrary, I dissent.