[No. 12406.  Department Two.  June 8, 1915.]

# FRANK DAVIS, *a Minor, Respondent,* v. THE CITY OF WENATCHEE, *Appellant.*[1]

MUNICIPAL CORPORATIONS—CONTRACT FOR IMPROVEMENTS—VALIDITY —INDEPENDENT CONTRACTORS—TORTS—LIABILITY OF CITY.  An understanding arrived at by correspondence between the water commissioner of a city of the third class and contractors, whereby they undertook to dig trenches in the streets for water mains, involving an expenditure of over $500, is not a valid contract of the city whereby the contractors would be independent contractors, in view of Rem. & Bal. Code, § 7694, requiring street contracts requiring an expenditure of $500 to be let to the lowest bidder; and in view of the city ordinances requiring certain provisions in such contracts, and the taking and approval of indemnity bonds securing performance of the same.

SAME—TORTS—PUBLIC IMPROVEMENTS—INDEPENDENT CONTRACTORS —LIABILITY OF CITY—ESTOPPEL.  Where a city permits street work to be done without any valid contract therefor and accepts the benefits thereof, it cannot claim that the persons doing the work are independent contractors instead of servants of the city, and therefore it cannot escape liability for the negligence of such parties, on the plea that it was acting *ultra vires.*

SAME—PUBLIC IMPROVEMENTS—TORTS — LIABILITY — EXPLOSIVES— FAILURE TO SAFEGUARD.  A city is liable for negligence in failing to safeguard explosives, known by it to be used by its agents and employees in digging trenches in the streets, where dynamite caps and fuse were left in an untied sack upon the parking strip after work for the day was done, and a child found the same and was injured by the explosion of a cap.

SAME—TORTS—NOTICE TO CITY.  Where a city is doing work through its own employees, it is charged with notice of their negligent acts in using and failing to safeguard explosives used in the work.

TRIAL—INSTRUCTIONS—CONSTRUCTION.  Error cannot be predicated upon a detached part of an instruction, which was not erroneous when taken in its context, and reading the instruction as a whole.

NEGLIGENCE—CARE AS TO CHILDREN—EXPLOSIVES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.  The contributory negligence of a boy, eleven years of age, in holding a lighted fuse in a dynamite cap, is a question for the jury, where he testified that he did not

[1]Reported in 149 Pac. 337.

know what the cap was, and used it to hold the fuse to avoid burning himself and he thought the lighted fuse would only "fizz."

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $2,750 for the loss by a boy, eleven years of age, of the first two joints of the thumb and the first two fingers is not so excessive as to indicate prejudice or other illegal motives.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 1, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a minor through the explosion of a dynamite cap. Affirmed.

*Fred Kemp* and *E. L. Baker,* for appellant.
*Reeves, Crollard & Reeves,* for respondent.

ELLIS, J.—This is an action for damages for personal injuries sustained by the plaintiff, a minor eleven years of age, through the explosion of a dynamite cap.

In the spring of 1913, street contractors, Berry & Monary, entered into correspondence with Charles T. White, water commissioner of the city of Wenatchee. The correspondence embodied an offer on the part of the contractors to dig trenches in the streets of the city for water mains, and an acceptance of the offer by White, as water commissioner. The understanding between the contractors and the city never assumed a more definite form than in this correspondence. One of the trenches was being dug in Okanogan avenue, one of the principal thoroughfares of the city, near the west curb of the street. The plaintiff's home is on Okanogan avenue in the same block where the work was in progress.

On the afternoon of April 30, 1913, the workmen left the ditch and the street at five o'clock, one of the employees leaving a gunny sack containing some fuse, dynamite and dynamite caps on the parking strip near plaintiff's home. The sack was untied. Plaintiff and other children were playing about the street and noticed the sack. He and a younger boy looked into it and took one of the caps and a piece of the

fuse. In order to avoid being seen, these two and another boy still younger went into an alley near the Davis home, and the plaintiff lighted the fuse. Thinking to hold it without burning his hand, he inserted the fuse into the dynamite cap and held the cap in his hand. The cap exploded and injured plaintiff's left hand so severely that it became necessary to amputate the first joints of the thumb and first two fingers of the hand.

The water commissioner did not assume general supervision of the blasting, but, on the afternoon of April 30th, he had been there and instructed the contractors how to blast a rock without injuring a water main already laid in the street. It appears that the gunny sack had been lying on the parking strip, where found by plaintiff, the greater part of the day, and the danger from explosives thus allowed to remain had been commented upon by observers. The trial resulted in a verdict and judgment for $2,750, and interest, $110 expenses, and costs of suit. The defendant appeals.

The appellant urges the following grounds for a reversal: (1) that the negligence was that of independent contractors, and that the work was not so inherently dangerous as to impose a liability on the city for the negligence of the contractors; (2) that the court erred in giving certain instructions and in refusing others; (3) that the plaintiff was guilty of contributory negligence as a matter of law. It is also claimed (4) that the judgment is excessive.

I. The first contention presents the initial question, Did Berry & Monary have any valid contract with the city? If not, they were not independent contractors. The city of Wenatchee is a city of the third class. It is conceded that the alleged contract contemplated an expenditure exceeding the sum of $500. The statute governing the letting of contracts by cities of that class, so far as here material, provides:

". . . in all street and sewer work, . . . when the expenditure required for the same exceeds the sum of five

hundred dollars, the same shall be done by contract and shall be let to the lowest responsible bidder, after due notice, under such regulations as may be prescribed by ordinance: . . ." Rem. & Bal. Code, § 7694 (P. C. 77 § 345).

An ordinance of the city of Wenatchee, which is in evidence, passed pursuant to this statute, makes the same provision as to contracts requiring an expenditure in excess of $500, and provides that the contract shall contain:

"Substantial covenants requiring the contractor to direct and maintain during the night time, barriers and lights to prevent accidents, and that the contract shall contain other covenants as experience may necessitate to save the city harmless from damages and to indemnify the city against all liability for failure of the contractor to perform the contract or all liabilities which the city might suffer from the carelessness or neglect of the contractor, the agents, employees or workmen. . . .

"That whenever any work or improvement is let by a contract, the officer of the city letting the contract, shall take a proper surety bond in the amount not less than the contract price, conditioned for the performance of the contract; and also conditioned to indemnify the city against all liabilities which might accrue against the city by failure of the contractor to perform the contract or in any wise resulting from the carelessness or neglect of the contractor, his agents, employees or workmen.

"That such bonds shall be submitted to the city attorney for examination and shall be approved by him and the mayor; and that no contracts shall take effect until the bonds required by the ordinance, properly certified, and approved, shall have been filed." Ordinance of Wenatchee, No. 179.

It is admitted that no attempt whatever was made to comply with the provisions either of the statute or the ordinance. It is clear that the agreement never took effect as a valid contract. *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063; *Moran v. Thompson*, 20 Wash. 525, 56 Pac. 29; *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226; *State ex rel. Craig v. Newport*, 70 Wash. 286, 126 Pac. 637. This phase of the case is not affected by the assumption that, in-

asmuch as the city had the power by observing the statute and ordinance to make a valid contract, the contract, though made without such observance, was not *ultra vires*, and the city might, therefore, be compelled to pay to Berry & Monary the reasonable value of the work done by them under the invalid agreement.    Assuming, without deciding, that this would be the case as between the parties to the contract, under the rule announced in *Green v. Okanogan County, supra*, and *Criswell v. Directors of School District*, 34 Wash. 420, 75 Pac. 984, the recovery, nevertheless, would be not upon the contract, but upon a *quantum meruit. Hambach v. Ward*, 69 Wash. 351, 125 Pac. 140.   The parties would not recover as contractors, independent or otherwise, but as servants or agents of the city, who by their labor had conferred a benefit which was accepted and enjoyed.   In other words, the city would be estopped to withhold the reasonable value of the work while retaining the benefit.   This, however, would not estop third parties injured by any negligence in the progress of the work, avoidable by reasonable supervision, from maintaining an action against the city as the party primarily liable, on the ground that there was no contract and that it was not only within its power, but that it was its duty, to supervise the work, which it bound no one else to supervise, either by contract let as prescribed by statute, or by bond conditioned as provided by ordinance.   The dominant fact is that the city was permitting this work to be done upon its streets and accepting the benefit without any valid contract, in direct contravention of the positive provisions of the statute and ordinance.   The situation presented is, therefore, precisely the same as that found in the case of *Collensworth v. New Whatcom*, 16 Wash. 224, 47 Pac. 439.   In that case, New Whatcom, a city of the third class, in disregard of this same section of the statute, by mere resolution of its council and without letting any contract, undertook to dig certain ditches for the extension of its water system, by the direct employment of day labor under the supervision of the city

engineer. The estimated cost of the work was in excess of $500. In the prosecution of the work, a carelessly fired blast injured the plaintiff. The city sought to avoid liability for the injury on the ground that in doing the work by day labor, instead of letting the work to an independent contractor, it was acting *ultra vires*, hence the parties who fired the blast and whose negligence caused the injury were not servants or agents of the city. Holding this view unsound, this court said:

"We think it may be conceded that the resolution of the council above set out did not legally constitute the engineer the agent of the city. But it does not follow that the city can escape liability for the injuries occasioned to the plaintiff by the careless and negligent act of those actually within the control of the corporate authorities engaged in the prosecution of a work ostensibly within the scope of its corporate power. The reasons which would defeat an action brought by a corporation creditor upon a contract attempted to be created in disregard of statutory requirements, or an action brought by the laborers themselves to secure the value of their services, are not applicable to the present action. The creditor or laborer in such cases enters into the contract or renders the service with full knowledge, presumably, that the law forbids that the city should make such a contract, or forbids that the city should undertake the work in which the services were performed. But these reasons are entirely inapplicable when urged in defense of an action of the character brought by the plaintiff herein. His injuries have been sustained, not as a consequence of any act in which he has participated or had knowledge. The respondent cannot be charged with any knowledge of the infirmity of the attempted contract of employment between the city and the persons firing the blast. It is enough, we think, that the city possessed the undoubted authority to construct or extend its water works system, and the mere fact that in attempting so to do it did not conform to the requirements of its charter furnishes no sufficient reason for exempting it from liability for the injury occurring to respondent."

Bearing in mind the fact that, in the case now before us, the work was being performed on the city's streets and for

the city's benefit and at the city's expense, but under no valid contract, it is at once evident that the language above quoted is directly applicable here. The city possessed the undoubted authority to make excavations in its streets for water mains. The mere fact that in attempting to do so it did not conform to the requirements of the law and its ordinances "furnishes no sufficient reason for exempting it from liability for the injury occurring to the respondent." Having placed the duty of proper supervision of the work upon no one else in the only manner authorized by law, that duty, as a matter of law, still remained with the city. The result of the failure to observe that duty cannot be avoided by the specious plea of a contract invalid on its face and only enforcible even as between the parties thereto, if at all, on the principle of estoppel. It is elementary that estoppels to be available must be mutual. There can be no mutual estoppel as between the city and the respondent, a total stranger to the alleged contract, to deny the contractual relation as relieving the city of its positive duty to provide such adequate supervision of those employed on the work as to avoid dangers reasonably to be anticipated from the negligent use or care of explosives necessarily employed in the performance of the work. It is no argument to say that the respondent has lost no right by reason of the invalidity of the contract. What is more to the point is that the city can gain no immunity by reason of an invalid contract or an invalid mode of performing the work. It was still under the positive duty of providing competent supervision to avoid danger.

There can be no doubt of the appellant's negligence in the premises. The city authorities knew that explosives were necessary and were actually being used in the prosecution of the work. It was its positive duty to exercise reasonable care, not only to avoid negligent use, but negligent abandonment of the explosives upon the street during the progress of the work. It was not only under the general duty to keep its streets free from avoidable damages reasonably to be antici-

pated, but it was also under the same duty to safeguard explosives used by its agents and employees upon the streets as that incumbent upon private persons relative to their own premises under the same conditions. The case thus falls within the rule of liability sustained by this court in such cases. *Crabb v. Wilkins*, 59 Wash. 302, 109 Pac. 807; *Akin v. Bradley Eng. & Mach. Co.*, 48 Wash. 97, 92 Pac. 903, 14 L. R. A. (N. S.) 586; *Olson v. Gill Home Inv. Co.*, 58 Wash. 151, 108 Pac. 140, 27 L. R. A. (N. S.) 884; *Mathis v. Granger Brick & Tile Co.*, 85 Wash. 634, 149 Pac. 3.

These considerations dispose of the appellant's argument based upon our decision in *Wilton v. Spokane*, 73 Wash. 619, 132 Pac. 404. In that case, the work was done under a valid contract creating the relation of an independent contractor in the person performing the work, relieving the city of that strict duty of supervision which would have existed but for the contract. In that case, moreover, the danger was hidden so as not to be discernible by mere inspection. Here there is no contract which the city can invoke to avoid liability to third persons, and the negligence would have been discovered by any sort of supervision.

We find it unnecessary to decide whether, in view of the known necessity of using explosives in the work, the city, even had there been a valid contract, could have avoided liability for the negligence of an independent contractor. Even in such a case, it is admitted that the city would have been liable for injury resulting from negligent firing of a blast, because of the inherent danger of the work imposing the nondelegable duty of supervision. *Freebury v. Chicago, M. & P. S. R. Co.*, 77 Wash. 464, 137 Pac. 1044. In any event, there being no contract, the question is not material here.

II. The court by its instructions took from the jury the affirmative defense that the negligence was that of independent contractors and that the city had no notice of the presence of the dangerous substance on its street. As we have seen, there was no independent contract, and the work, in

contemplation of law, was being performed by the city through its own employees. The act of leaving the explosives in the street was, therefore, its own act. It must be charged with notice of its own negligence. It follows that there was no error in these instructions.

On the question of contributory negligence, the court instructed as follows:

"You are further instructed that in determining the question whether or not the plaintiff was guilty of contributory negligence to such an extent as to directly and proximately and materially contribute to the injury which he suffered, it is the duty of the jury to take into consideration the boy's age and all of the circumstances surrounding him, his experience or lack of experience, his knowledge or lack of knowledge, the amount of prudence, care and judgment which would ordinarily and reasonably be expected of a boy of that age under the circumstances and conditions shown by the evidence in this case. That is the rule by which the question of whether or not he is guilty of contributory negligence is to be measured by the jury.

"*You should not apply to the plaintiff in the case the same rules you would apply to a grown man;* you should make allowances for his youth, and in attempting to determine the question of his contributory negligence or the lack of it, inquire whether or not he exercised such care as would reasonably and ordinarily be expected of a boy of his age, intelligence and experience under like circumstances and conditions."

The appellant isolates the phrase which we have italicized and charges grievous error in its use. It is urged that the jury was thereby precluded from taking into consideration the boy's age, experience, knowledge and intelligence. A reading of the phrase in context shows that every one of these elements was included in the same sentence in which it occurs. An instruction identical in thought, though more argumentatively expressed, was approved by this court in the case of *Tibbits v. Spokane*, 64 Wash. 570, 116 Pac. 397. We have so often held that error cannot be successfully pred-

icated upon a detached part of an instruction, not erroneous when taken in context, that citation to the point seems unnecessary. We find no error in the instructions.

III. At the time of the accident, the respondent was only eleven years old. The other two boys were nine and eight respectively. The respondent testified that he did not know what the caps were and did not know that they would explode; that he knew what the dynamite was and also the fuse; that he held the fuse in the cap to avoid burning himself, thinking, as he expressed it, that the fuse would only "fizz"; that when the fuse burned down to the cap, the cap exploded and blew his fingers off. The other two boys testified that they went into the alley so no one would hear the explosion, but both of them thought the fuse would just "fizz." Though the respondent testified that he had never seen dynamite exploded, and one of the other boys testified that he and the respondent had watched the workmen explode a blast, the conflict presented a mere question of credibility for the jury's solution, which, even if solved in favor of the other boy's statement, would not establish, as a matter of law, the respondent's knowledge of the dangerous character of the cap. As said by this court in *Olson v. Gill Home Inv. Co., supra,* in speaking of boys about fourteen years of age:

"In this case it was for the jury to determine whether respondent and the other boys, considering their age, their experience, and their knowledge of right and wrong, were in their acts governed by unreasoning and natural impulses."

Under the evidence here, the question of contributory negligence was clearly one for the jury. *Crabb v. Wilkins; Akin v. Bradley Eng. & Mach. Co.,* and *Mathis v. Granger Brick & Tile Co., supra.*

IV. Nor can we say that, as a matter of law, the verdict is excessive. This boy must go through life with a maimed and disfigured hand. The evidence tends to show that he can never use it in skilled labor. The amount may be larger than we would have awarded had we been the jury, but it is

not so large as to indicate prejudice or other illegal or unworthy motives on the jury's part.    We find no warrant for disturbing the judgment.    It is affirmed.

MORRIS, C. J., MAIN, FULLERTON, and CROW, JJ., concur.