### CITY OF TULSA v. McINTOSH et al.

No. 10940—Opinion Filed Feb. 20, 1923.

Rehearing Denied June 5, 1923.

(Syllabus.)

1. Release — Effect of Settlement by One Joint Tort-Feasor.

Though a settlement for compensation between one joint tort-feasor judgment debtor and the injured party will, in part, compensate the injured party and reduce the damages, the other tort-feasor judgment debtor is obligated to pay such a settlement and the consequent release of the one does not release others liable at law to see the injured party fully compensated.

2. Municipal Corporations — Independent Contractor — Construction of Contract.

The generally accepted meaning of the ter, "independent contractor" negatives the close supervision of details of the work by the employer, and where the contract between the parties clearly confers a supervisory power upon the representative of a municipal corporation and over a public improvement contractor, the relation between the municipality and the contractor can be none other than master and servant.

3. Negligence — Proximate Cause—Intervening Cause—Questions for Jury.

The question of negligence, where there is competent evidence introduced from which reasonable men might draw different conclusions, is one for the jury, and under like circumstances the question of proximate cause is one for the jury.

4. Same.

Where the evidence reasonably tends to establish original or primary negligence, and such evidence raises the question of the proximate cause of the injury, whether the original negligence or an intervening and independent cause, and reasonable men may draw different conclusions therefrom, the case is one for the jury.

5. Same—Liability of Defendant.

Where the defendant is guilty of original negligence, and from the evidence the inference may be reasonably drawn that the original negligence placed in motion the intervening and independent act, which was the immediate cause of the injury but that such injury would not have happened without the original negligence, the defendant will be held liable.

6. Municipal Corporations—Care of Explosives Used in Construction Work—Liability for Damages.

Where a city in constructing a sewer is using explosives, such as dynamite and caps, leaves such explosives in an unlocked tool box in one of the public streets near the playgrounds of one of the city's schools, where from 100 to 200 small children play while attending school, and a boy eight years of age takes from the box a number of the dynamite caps and distributes them among the school children, and a child eleven years of age receives one of the caps and takes it to his home, where he explodes it with a match, which explosion inflicts serious injury to such child, the city will be held liable for the damages.

7. Same—Judgment for Personal Injuries.

Record examined, and held, that there exist no ground for reversal of the judgment.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by Fred McIntosh, by his next friend, Andrew M. McIntosh, against the City of Tulsa et al., to recover damages for personal injuries. Judgment for plaintiff for $25,000. Defendant City of Tulsa brings error. Affirmed.

I. J. Underwood and Harry L. S. Halley, for plaintiff in error.

J. P. O'Meara, Chas E. Bush, and A. F. Moss, for defendants in error.

KENNAMER, J. This is an appeal prosecuted by the city of Tulsa, a municipal corporation, one of the defendants below, from a judgment of the district court of Tulsa county, entered upon the verdict of a jury for the sum of $25,000 in the cause originally brought by the defendant in error Fred McIntosh, by his next friend, Andrew M. McIntosh, as plaintiff, against the plaintiff in error and the defendants in error C. O. Frye and Howard Frye, as defendants. For convenience, the parties, when not otherwise designated, will be referred to by the denominations they bore in the court below.

The facts are, in substance, as follows: Fred McIntosh, the plaintiff, was a small school boy, eleven years of age, attending one of the city schools of the city of Tulsa. The city of Tulsa, by virtue of its powers as a municipal corporation, was installing a sewer on a street close to the playgrounds of the school which the plaintiff attended. In order to accomplish the installation of the sewer, the city of Tulsa advertised for bids from contractors in the usual manner of letting contracts for public improvements, and, after the regular procedure, awarded the contract to the defendants C. O. Frye and Howard Frye. The contract, which was introduced in evidence, does not materially differ from others of its type in general use at this time.

During the progress of the work, a great amount of blasting was necessary, and for this purpose the Fryes kept a tool chest near their work in which was stored, in addition to tools, blasting powder and dynamite caps for exploding the powder. The tool chest was left in the street near the playgrounds of the school where the plaintiff attended.

One of the schoolmates of the plaintiff took a large number of the dynamite caps from the chest and distributed them among his playmates, the plaintiff being one. The plaintiff took the caps given him to his home, thinking that the caps, if lighted, would "go off like a firecracker," and obtained some matches for the purpose of producing an explosion. Holding a cap in his hand, he proceeded to light it and await the explosion. The result was the loss of a part of his hand and ruined eyesight.

The plaintiff, on the tenth day of July, 1918, filed his petition in the court below, which petition was demurred to by the city of Tulsa. Upon the overruling of this demurrer, the city of Tulsa filed its separate answer, alleging, in substance, that the Fryes were "independent contractors," and also that the plaintiff's injuries were too remote from any negligence of the city to entitle him to recover. The Fryes also filed a separate answer, but the merits of that branch of the case are not now here on appeal.

On the 5th day of May, 1919, the case went to trial, and, prior to the introduction of evidence, the city of Tulsa moved for a judgment on the pleadings. This motion was overruled, and is raised among the numerous assignments of error; but, in view of the decision of the court to follow, the court does not feel it necessary to pass upon that question.

The plaintiff introduced as a part of the evidence the contract between the city of Tulsa and the Fryes, and also called the boy who had taken the caps from the tool chest. He testified, in substance, that he had taken two full boxes of the caps a day or so before the day the plaintiff was injured; that he had hidden them in his father's barn; and that on the day that the plaintiff was injured, he took one of the boxes from its hiding place and gave the plaintiff some of the caps it had contained.

The plaintiff testified to the facts substantially as hereinbefore set forth.

At the conclusion of the plaintiff's testimony, the city of Tulsa demurred to the evidence of the plaintiff, which motion was overruled and exceptions taken. On the conclusion of the defendant's testimony, the city moved for a directed verdict upon the testimony introduced, for the reason that the same was not sufficient to warrant a judgment against the city of Tulsa. This motion was also overruled and exceptions duly taken. The city offered certain instructions for the jury, which were refused, and the court thereupon charged the jury in its own words.

On the 7th day of May, 1919, the jury returned a verdict in favor of the plaintiff against the city of Tulsa and C. O. Frye and Howard Frye in the sum of $25,000, which verdict was duly excepted to by the city and motion for new trial was made, overruled, and the case appealed.

It appears that, pending the appeal by the city of Tulsa, the defendants C. O. Frye and Howard Frye reached a settlement and discharge of their liability with

and to the plaintiff, and counsel for the city seems to be under the impression that this settlement should discharge their client. With this, the court is unable to agree. It is true that some authority does exist to the effect that a release of one joint tort-feasor releases all others, but this court believes that that line of authority is predicated upon a confusion of the principles of suretyship with those of damage for wrong-doing. The decision in the case of Bland v. Lawyer-Cuff Company, decided by this court February 12, 1918, reported in 72 Oklahoma, 178 Pac. 885, considers the authorities extensively, and, we believe, in a correct light.

It is the purpose of the law, and its very intent, that every wrongdoer should be individually liable to see that the party injured by this tort be compensated. There is no common-law rule or statutory enactment which implies a suretyship between joint tort-feasors, or any privity between them and the party injured by their tort. Though a settlement for compensation between one joint tort-feasor judgment debtor and the injured party will, in part, compensate the injured party, and thus reduce the damages that the other judgment debtor is obligated to pay, such a settlement and the consequent release of one joint tort-feasor judgment debtor do not release others liable at law to see the injured party fully compensated. Carey v. Bilby, 63 C. C. A. 361, 129 Fed. 206; Edens v. Fletcher, 79 Kan. 143, 19 L. R. A. (N. S.) 616

One of the two main contentions of counsel, and one of the most material questions on this appeal, is the defense of the city that C. O. Frye and Howard Frye were in the relation of "independent contractors" to the city of Tulsa, under their contract introduced in evidence. This question is not a new one in this state, and the law governing the determination of the nature of a contractual relation between parties is too broadly accepted and too well settled to begin, at this time, to question its reason or its application. Desirable as it may be, from a standpoint of public property, to maintain between a municipal corporation and a public improvement contract the arm's length status of employer and independent contract, we are unable from any authority before us to deny the legal possibility of the relation of master and servant, if the application of settled legal principles to the contract indicates that relation. Davis v. City of Wenatchee, 86 Wash. 13, 149 Pac. 337.

The generally accepted definition of an "independent contractor" is "one who, exercising an independent employment, contracts to do work according to his own method, without being subject to the control of his employer except as to results of the work." The Producers Lumber Co. v. Butler, 87 Okla. 172, 209 Pac. 738.

The contractual relation presented in this case and most of the public improvement contracts in general use are far removed from any possibility of the application of the rule above stated. The contract in evidence vests the city with the broadest of supervisory powers. Every act of the contractors, except the minutest details (which were probably inadvertently overlooked), are placed under the supervision of the city engineer. At one point it gives the city the right to declare the contract forfeited if the contractors refuse to discharge any person who shall disobey the orders of the city engineer or inspector. Though the court believes that no strict rules can be pronounced which shall constitute a conclusive test of the relation between the parties, we are satisfied without a doubt that such broad powers as are given the city in the contract in evidence are irreconcilable with the idea of an independent contractor in its present import; and we are therefore compelled, from the terms of the contract in evidence to treat the relation between defendants below as that of master and servant.

But the turning point of this appeal, in our opinion, rests upon the proximity in time and relation, or the remoteness of the cause of the plaintiff's injuries, to or from the nonfeasance of the city, if such existed. It is plain from an examination of the brief filed on behalf of the defendant, the city of Tulsa, that it is the contention of counsel for this defendant that, conceding the evidence is sufficient to establish primary negligence on the part of the defendant through its servants in storing dynamite caps in an unlocked tool box on the street near the school grounds, where small children played, the plaintiff was not entitled to recover, for the reason that it was the independent act of a third person. Forest Underwood, in taking the caps from the tool chest and giving them to the plaintiff that was the proximate cause of the injury. That this intervening act, which was the immediate cause of the injury complained of, was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, even though a high

degree of caution would have disclosed that it was possible.

It is argued, in this situation, the chain of causation is broken and the original negligence cannot be said to have been the proximate cause of the final injury. Many authorities are cited which support the rule as contended for by counsel for the defendant, among which are: Hall v. N. Y. Telephone Co., 214 N. Y. 49, 108 N. E. 182; Perry v. Rochester Lime Co., 219 N. Y. 60; Carpenter v. Miller & Son, 232 Pa. 362, 81 Atl. 349; Finkbeiner v. Solomon. 225 Pa. 333, 74 Atl. 170; Hale v. Pacific Telephone & Telegraph Co. (Cal. App.) 183 Pac. 280; Aflick v. Bates (R. I.) 43 Atl. 539; Horan v. Town of Water Town, (Mass.) 104 N. E. 464; Pollard v. Oklahoma City R. Co., 36 Okla. 96, 128 Pac. 300. While most of the cases relied on by counsel support the general rule that, where the intervening act was the immediate cause of the injury complained of and which destroyed the chain of causation in such manner that the original negligence cannot be said to have been the proximate cause of the injury, there cannot be a recovery, we are unable to agree with the counsel for the defendant in the case at bar that the trial court should have instructed the jury to return a verdict for the defendant, which in effect would have been for the trial court to have held, as a matter of law, that the independent act of the schoolmate of the plaintiff in taking the dynamite caps from the tool chest near the playgrounds and giving one to the plaintiff was the proximate cause of the injury, and not the original negligence of defendant in leaving the caps accessible to small children. We are clearly of the opinion that from the evidence introduced the question was one for the jury.

While it is true that the intervening cause, the taking of the dynamite caps by the schoolmate of the plaintiff, and the giving of one to him and his act in exploding it, was the immediate cause of the injury, it is evident that the intervening cause was set in motion by the original carelessness and negligence of the defendant through its servants in leaving in an accessible place a highly dangerous instrumentality. In this situation the defendant is liable for the resulting injury. It is rather a weak excuse to blame an eight year old boy, full of curiosity, for taking anything that he might suspect would explode and make a noise. Indeed, we believe it a very careless act to leave such dangerous instrumentalities as dynamite caps accessible to 200 small children, where the most likely thing to happen

was that some one or more would take possession of them and distribute the same among their companions. We are not unmindful of the fact that it was wrong for Forest Underwood, the eight year old playmate of the plaintiff, to lift the lid of the unlocked tool chest and take the box of dynamite caps, but we do not believe that it may be said, as a matter of law, that a child of this age would so appreciate the danger that it would excuse men of mature judgment, acting as the servants of the defendant, and render their act, as a matter of law, excusable in having placed such dangerous instrumentalities within the easy reach of children of immature judgment. In the case of Folsom-Morris Coal & Mining Co. v. John Devork, 61 Okla. 75, 160 Pac. 64, L. R. A. 1917A, 1290, the identical question, under similar circumstances, was by this court answered adversely to the contention of the defendant. Other cases in point may be found in the note to the last cited case. See: Clark v. E. I. Dupont de Nemous Powder Co. (Kan.) 146 Pac. 320, L. R. A., 1915E, 479; Mathis v. Grainger Brick & Tile Co., 84 Wash. 634, 149 Pac. 3; Davis v. City of Wenatchee (Wash.) 149 Pac. 337.

Without discussing the correctness of the conclusion reached in the cases cited by counsel for the defendant, we deem it sufficient to say that many of the cases disclose facts in many respects different from the facts in the instant case. Many of the cases are where the dangerous instrumentality was wrongfully taken from the private premises of the defendant in the action, and such cases are clearly distinguished from the case at bar. In the case under consideration the tool box, in which were stored the dynamite caps, was left in or near the public street unlocked for weeks at a time, at a place where many school children passed in going to and returning from school, and the box was constantly near the place where these children played on the school grounds. It was this negligence of the defendant in placing the caps accessible to these small children in a public place that caused the injured plaintiff to come into contact with the very dangerous instrumentality. It was this primary negligence of defendant that put into motion the immediate cause of the injury resulting in the damage to the plaintiff.

It only required the exercise of ordinary care and prudence on the part of the defendant, in keeping such instrumentality in a safe place not accessible to children, to prevent the plaintiff from having the possession of the same. It was this primary negligence of the defendant that put into

motion the intervening act of the small schoolmate of the plaintiff and the act of the plaintiff in exploding the cap with a lighted match, which resulted in his injury. It occurs to us that it is "splitting hairs" when the courts go so far as to deplore such sad accidents, and then place the proximate cause of the injury on a small child incapable of appreciating the danger in the circumstances. Concisely stated, this class of authorities hold that, although the defendant is guilty of original negligence, making possible the very injury that has resulted, on the theory the wrongdoer did not anticipate such a result, it will be held the act of a child incapable of realizing the danger is the immediate cause of the injury which resulted. The fallacy in these authorities is in excusing the wrongful acts that placed in motion the intervening and independent acts which were the immediate cause of the injury. This question is one for the jury as much as the question of primary negligence, where there is competent evidence from which reasonable men may draw different conclusions.

This court has repeatedly held that where there is evidence on the question of primary negligence on which reasonable men might differ as to the facts established and the inferences to be drawn therefrom, the case is one for the jury. M., K. & T. Ry. Co. v. Wolf, 76 Okla. 195, 184 Pac. 765.

In the last case, supra, it was held:

"To constitute actionable negligence three essential elements are necessary: (1) The existence of duty of the defendant to protect the plaintiff from injury; (2) failure to perform this duty; and, (3) injury resulting proximately from such failure.

It is our conclusion in the case at bar that there was sufficient evidence to take the case to the jury upon all three essential elements of actionable negligence, and that the trial court did not err in overruling the demurrer to the evidence of the plaintiff and the request for peremptory instruction. That the defendant had a fair and impartial trial. That the other assignments of error complaining of the action of the trial court in rejecting certain evidence and requested instructions, if error, were harmless, in that upon an examination of the whole record we are unable to say there has been a miscarriage of justice or that the defendant was denied a constitutional or statutory right. In this situation, under section 6005, Rev. Laws 1910, the judgment must be affirmed, and it is so ordered.

JOHNSON, V. C. J., and McNEILL, KANE, NICHOLSON, COCHRAN. and BRANSON, JJ., concur.

### On Rehearing.

KENNAMER, J. All of the questions raised by the plaintiff in error in its petition for a rehearing have been considered by this court in the original hearing of the cause, and it does not feel called upon, from the additional arguments advanced, to reverse its holdings; but counsel for plaintiff in error have so earnestly insisted that the question decided in the first paragraph of the syllabus of the original opinion is not sustained by the authorities, we have decided to give the question further consideration.

There was quite some contention by plaintiff in error that a distinction existed between the rule as laid down in the case of Bland v. Lawyer-Cuff Company, 72 Oklahoma, 178 Pac. 885, and the rule appertaining to release of a joint tort-feasor after judgment has been rendered. From a search of the authorities, the court is unable to find such a valid distinction made.

In the case of Murray v. Lovejoy, 17 Fed. Cas. 1052, Clifford, Circuit Justice, in a most exhaustive discussion of the authorities and an excellent conclusion deducted therefrom, said:

"Some diversity of judicial decision still exists, even in this country; but the great weight of authority in the United States is on the side of the theory that nothing short of satisfaction transfers the title, and in that view of the question I entirely concur. * * * (citing authorities) * * * Where no satisfaction has been received, the law is clear, to the effect as stated; but the defendants contend, in the second place, that the recovery of judgment against the sheriff, and the receipt of partial satisfaction of the judgment from him, operate as a complete bar, upon the ground that the receipt of partial satisfaction is an election, on the part of the plaintiff, to seek his redress against that party. * * * A recovery of judgment against one is an election, undoubtedly, to regard the remedy as several, and such an election is final and conclusive. But the judgment is no bar to another suit against another of the cotrespassers, as has already appeared, unless the judgment has been satisfied. * * * I am of the opinion that there is no middle ground on which a court of justice can safely stand in regard to it. When viewed in that light, it must either be held that the recovery of the judgment is a bar, or that it is no bar; and if the latter, as I hold, then nothing short of full satisfaction is an answer to a suit against another of the cotrespassers. * * * Regarding the ques-

tion in that point of view, that it appears of record in this case that the measure of the injury sustained by the plaintiff was legally ascertained in his suit against the sheriff; that it also appears of record that $830 of that amount has been paid, I am of the opinion that the plaintiff is entitled to recover the same damages as in the suit against the sheriff, deducting the amount received in part satisfaction of that judgment."

This case was affirmed by the Supreme Court of the United States in the case of Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129, wherein Mr. Justice Miller, after also considering numerous authorities, said (p. 134):

"It may be said that neither does the satisfaction by his cotrespasser, or a release to his cotrespasser do this; and that is true. But when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come. he is so far affected in equity and good conscience that the law will not permit him again to recover for the same damages. But it is not easy to see how he is so affected, **until he has received full satisfaction,** or that which the law must consider as such.

"We are, therefore, of the opinion that nothing short of full satisfaction, or its equivalent, can make good a plea of former judgment in trespass, offered as a bar in an action against another joint trespasser, who was not a party to the first judgment."

The reasoning in these cases is peculiarly applicable to the case at bar. Though the situation presented to the federal courts is in some respects different from this one, the distinction is rather contra to the contention of the plaintiff in error than in support of it. The cases cited by counsel in support of their petition are probably in point. This court will not deny that there are cases in support of their position. This was recognized in the former opinion in this cause. But this court does not believe that they are borne out by logic or justice.

It appears to us that judgments in tort are rendered for the purposes of compensation, and until full satisfaction or its equivalent has been obtained from every available source, the plaintiff, the injured party, may continually and successively proceed to obtain redress for his wrong.

The justice of such a position seems to this court to be beyond question and invulnerable to attack. That the party has obtained a judgment against the wrongdoers makes the argument the stronger. If the claim was unliquidated, undetermined, it might, with more reason, be argued that a release of one of the joint tort-feasors for a pecuniary satisfaction might be construed as a contractual liquidation of the claim and a full settlement. But where the claim has been liquidated by judgment, where the jury has determined the extent of the damage done, presumption and reason are clearly against any contention that an acceptance of less than the entire sum from one of the parties is an indication that the injured party desires to accept that sum as full satisfaction for the determined amount of his injury and waives the recovery of the balance as against the other wrongdoers. See United Society of Shakers v. Underwood, 11 Bush. 265, 21 Am. Rep. 214; Ellis v. Eason, 50 Wis. 138, 36 Am. Rep. 830; Gilpatrick v. Hunter, 24 Maine 18, 41 Am. Dec. 379; McCrillis v. Hawes, 38 Maine, 568; Ellis v. Bitzer, 2 Ohio, 89, 15 Am. Dec. 534; Eastman v. Grant, 34 Vt. 387, and note, 92 Am. St. Rep. 875.

To sanction the doctrine the plaintiff in error asserts, to us appears to be a perversion of justice. Before this court will deny a party the redress of his wrong there would have to be a much stronger showing of the intention of that party to acquiesce therein than was apparent in this case. In fact, this court is of the opinion, as expressed heretofore, and in the cases above cited, that the purpose of actions for tort being for the redress of the injury of the plaintiff, there must be a showing of satisfaction in full, or its equivalent, by definite indication and acceptance of the injured party, before he will be denied the right to proceed upon his judgment for its determined value.

While the rule is sound that such person may have only one satisfaction for his injury, reason and justice demand that such satisfaction be full and complete, and not partial. The law gives such person the right to proceed severally against every person concerned in committing such an injury, and it would be a manifest absurdity to hold. before the claim is liquidated, such person may receive from one of the wrongdoers a part of his claim without releasing the others, but that after the claim is liquidated by the judgment of the trial court such partial settlement may not be made with such of the parties who do not care to prosecute the case to the appellate court. See Harn et al. v. Interstate Bldg. & L. Co. et al., 77 Okla. 265, at page 268, 188 Pac. 343.

For the reason given, petition for rehearing is denied.

JOHNSON, C. J., and KANE, NICHOLSON, COCHRAN, BRANSON, HARRISON. and MASON, JJ., concur.